FRANCIS A. BONANNO, INC., D.B.A. ALLIED WINES, APPELLANT, *v.* ISC WINES OF CALIFORNIA, APPELLEE, ET AL.

(No. 10977—Decided January 24, 1989.)

*Gerald Turner,* for appellant.
*Daniel Temming* and *James M. Kelly,* for appellee.

MCBRIDE, J. The complaint of Francis A. Bonanno, Inc., d.b.a. Allied Wines ("Allied"), against ISC Wines of California sought a preliminary and permanent injunction and damages essentially because ISC terminated the plaintiff's franchise as a distributor contrary to R.C. 1333.84 and 1333.85 in that it failed to act in good faith and with just cause in cancelling part (the Cincinnati district) of the franchise agreement. The franchise for the Dayton district was not cancelled and is not involved in this action.

After a hearing, the request for a preliminary order was denied. This denial was appealed in No. CA 10755 and dismissed for lack of a final entry.

The case proceeded on a joint motion by the defendants for summary judgment. The issue was submitted on the testimony and exhibits received at the hearing on the request for a preliminary order and an affidavit submitted on behalf of the co-defendant, Ohio Valley Wine Company, the holder of the new franchise.

The trial court found that evidence was undisputed that plaintiff failed to establish that the defendants did not act in good faith or with just cause on terminating the franchise for the Cincinnati district. The rationale of the trial court appears more fully in its denial of the preliminary injunction. It said:

"This Court finds no evidence of bad faith within the statutory definition to have been presented.

"The question then becomes whether under the state of the evidence presented a case for violation of the 'just cause' requirement has been made out. This Court thinks not.

"No statutory definition of 'just cause' is presented under Section 1333.82. This Court is instructed in this regard by *Caral Corp., d/b/a Heidelberg Distributing Co.* v. *Taylor Wine Co., Inc.,* No. C-1-80-215, unreported, United States District Court, Southern District of Ohio, Western Division. Therein the court found that a manufacturer should remain free to exercise a business judgment in determining to cancel an alcoholic beverage franchise. While a manufacturer's business 'dissatisfaction' may not be arbitrary, a dissatisfaction based on reason furnishes just cause.

"This Court finds that there is no legal requirement that a manufacturer's business judgment or decision be a good one, or that the Court perceive it to be well reasoned. The only legal requirement is that the decision not be arbitrary and without reason. To hold otherwise would be to put the Court in the position of a participant in alcoholic beverage franchise management, a position the legislature could not possibly have intended."[1]

Appeal followed. Appellant in Exhibit C of its brief in a letter to the trial judge explained that its counsel proposed the final entry incorporating the trial court's interpretation of "just cause" to expedite a review of that interpretation, realizing that plaintiff's success with a jury would be based upon the trial court's probable instructions, with which plaintiff did not agree.

The plaintiff, doing business as Allied, was a distributor for ISC's wine in the Dayton area since 1983. Stetter Wine Company was the distributor in Cincinnati for fifteen years. Both warehoused cases they purchased and sold to retailers. In 1986, ISC's sales, except for the Cleveland area, decreased substantially in Ohio, but increased nationally. On December 30, 1986, Allied bought out Stetter and took over the inventory and sales force in Cincinnati, expanding its operations into a second major market area. The decrease in the Dayton area was nominal and ISC had no objection to the takeover. Allied serviced Cincinnati out of its warehouse in Springboro, Ohio, replacing the one in Cincinnati.

Based on previous years' sales, the loss of Ohio business, which started in 1985, was dramatic in 1986, reaching 42.2 percent. After the takeover by Allied on December 30, 1986, the decline in sales in Cincinnati continued to fall in 1987, forty-two percent, 40.7 percent, 28.3 percent, and 45.1 percent

---

[1] The determinative issue in the *Coral* case for the denial of a preliminary order was deception by the franchise in reporting its sales.

in January through April. There was a loss in Dayton, substantially smaller.

The testimony is that wines are bought primarily on impulse and that aggressive marketing techniques for merchandising are essential. While competition is not discussed at length in the record, it is emphasized that sales to retailers involve a constant struggle for shelf space and position, use of displays, and cold space, and other marketing methods suggested by the wholesaler.

Following the additional decrease in early 1987, ISC made a marketing survey in Cincinnati and found little evidence of promotion of its products. The parties met and both expressed concern over the diminishing business in Cincinnati and the lack of sales promotion. The letter recited that it was formal notice that Allied must improve ISC's presence in Cincinnati by September 1, 1987 or the agreement with Allied would be terminated. (The Dayton franchise was not mentioned and exists to this day.) The letter set an objective of an 8.6 percent increase over 1986 depletions as an improvement, which was considerably less than the earlier losses of sales. The letter included survey forms indicating the basis for its unfavorable survey and promised another survey to ensure successful follow-through.

On September 14, 1987, ISC reported to Allied that its depletions of stock were worse than the previous months of 1987. Compared to 1986, the decrease in sales were fifty-eight, fifty-nine and fifty-six percent for June, July, and August and that the objective of two thousand eight hundred cases was not achieved by depletions of only one thousand eighty-seven cases for the period. It is mentioned that distributors of other products demonstrated their ability to achieve results in the competitive environment. The letter concluded by ter-minating the franchise agreement effective November 16, 1987 and expressed appreciation for the Dayton operation and a wish to see Allied grow in that area.

The termination was executed with respect to the Cincinnati franchise agreement and the substitution of Ohio Valley Wine Company was not delayed when the temporary restraining order was denied.

The essential facts are not disputed. One might wish for a more extended exposition of marketing and sale promotion of an impulse product like alcoholic beverages in a highly competitive field, especially since the introduction of Bartles & Jaymes; but, however fascinating, the success of competing manufacturers was not relevant in this case.

Besides, the assignment of error considerably narrows the issue in this case to the rationale expressed in the opinion of the trial court sustaining the termination of the franchise that a good or well reasoned business judgment was not required. The assignment of error recites:

"The Trial Court erred when it held that the Defendant-Appellee, ISC Wines of California, a manufacturer and supplier of alcoholic beverages, under the Ohio Alcoholic Beverage Franchise Act (Revised Code Sections 1333.82 et seq.), has *no legal requirement,* pursuant to the 'just cause' and 'good faith' provisions of Sections 1333.84 and 1333.85, when terminating the franchise to distribute alcoholic beverages granted to Plaintiff-Appellant, Francis A. Bonanno, Inc. dba Allied Wine & Spirits Import Co., *to make a good or well reasoned business judgment* or decision to terminate the franchise." (Emphasis added.)

R.C. 1333.84 provides, in part:

"Notwithstanding the terms of any franchise, no manufacturer or

distributor engaged in the sale and distribution of alcoholic beverages, or a subsidiary of any such manufacturer, shall:

"(A) Fail to act in *good faith or without just cause* in acting or purporting to act under the terms of a franchise or in cancelling or failing to renew a franchise * * *." (Emphasis added.)

R.C. 1333.85 provides, in part:

"No manufacturer or distributor shall cancel or fail to renew a franchise or substantially change a sales area or territory without the prior consent of the other party for other than *just cause * * *.*" (Emphasis added.)

The following section outlines the duties of the distributor, as follows:

"During the effective period of a franchise, the distributor shall maintain adequate physical facilities and personnel so that the product or brands of the manufacturer are at all times properly represented in the sales area of the distributor, the reputation and trade name of the manufacturer are protected, and the general public receives adequate servicing of the products or brands of the manufacturer. The distributor shall at all times act in *good faith.*" (Emphasis added.) R.C. 1333.86.

The legislature imposed the obligation to act in "good faith" upon both the manufacturer and the distributor, and in R.C. 1333.82(E) provided its definition to meet this specific situation.

"Good faith" means the duty of any party to any franchise, and all officers, employees, or agents thereof, to act in a fair and equitable manner toward each other so as to guarantee each party freedom from coercion or intimidation; except that recommendation, endorsement, exposition, persuasion, urging, or argument shall not be deemed to constitute a lack of good faith or coercion."

Subsection (D) of R.C. 1333.84 contains another prohibition applicable to the instant case. No manufacturer shall:

"*Without reasonable cause,* withhold delivery of alcoholic beverages ordered by a distributor, or change or *amend a distributor's quota of a manufacturer's product or brand*[.]" (Emphasis added.)

By prohibiting an amendment without reasonable cause to a distributor's quota, the legislature recognized the use of incentives, goals and quotas as an incident to the business of manufacturing and selling alcoholic beverages. In this case, there was no evidence of a prior quota. The one established was unusually fair, a six-percent recovery of a more substantial loss.

The point is there was no evidence of coercion or intimidation, however defined, and that the reasonable form of incentive for a return to a successful conduct of business in Cincinnati was not in violation of R.C. 1334.84(D). The substantial and continued decline of business in Cincinnati, not the modest quota, was the reason for termination of the franchise.

While these statutes require both "good faith" and "just cause" for termination of a franchise, there is no statutory definition of "just cause," similar to that provided in R.C. 1333.82(E). "Just cause," standing alone, is a generic expression incorporating broad standards of legality, reasonableness, fairness, and morality. The causal factor it describes must be good, not bad. Without the guideposts of the law and the individual factual circumstances, the expression shares a sense of unreality that is not possible to define definitively.

However, the expression "just cause" is a favorite tool in judicial and legislative circles when applied to specific situations, appropriately cir-

cumscribed by specific facts. It is regularly used to describe the proper exercise of judicial and executive discretion and judgment. It is a popular source of litigation in unemployment compensation cases. Where the specific factual situation is identified the righteousness or reasonableness of an act is determined by the facts that spring from that relationship and the specific law applied to each distinct relationship. In other words, what is labeled as "just" or "unjust" depends not upon a magical definition of those conclusive words, but upon the individual facts and law involved.

There is no reason for a failure to apply the same rationale to the competitive business spectrum where the facts and the law are totally different. The guidepost of law is the legislative enactment which defines and determines what is right or wrong, just or unjust.

There is a distinction between "good faith" and "just cause." "Good faith" generally means an honest intention by a person to abstain from wrongdoing along with an absence of facts to the contrary. "Just cause" refers to the origin or reason that prompted an act.

The statutory definition of "good faith" in the alcoholic beverage franchise statute has a specific purpose beyond mere individual good faith. It outlines what acts are wrong, such as coercion, and what acts do not constitute coercion or lack of good faith in this special relationship. To this extent, the definition of "good faith" in R.C. 1333.82(E) adds a special definition that includes tests for what is just cause. Applying that definition, an act not in good faith is not just, reasonable or righteous. The statutory definition goes beyond the traditional explanation by specifically identifying acts that are not lawful and acts that are proper, reasonable and just in the conduct of the commercial distribution of alcoholic beverages. The special nature of this legislation requires that the legislative guideposts be recognized in determining what is just cause as well as what is good faith.

The statutory definition of "good faith" is a balanced explanation of what was intended in the franchise relationship. It prohibits acts of coercion and intimidation (which we do not find in this case), and it authorizes non-offensive and non-threatening acts of reasonable business aggressiveness as acceptable. In other words, the issue of just cause is whether the manufacturer commits acts of actual coercion or intimidation, or, in the alternative, whether such acts were honest and reasonable business decisions of any one of the acts authorized in the applicable sections of the statute.

Attempts to expand statutory definitions invite risks. Defining that which has already been defined imposes different directions of thought that may cause confusion. A former Chief Justice once said that when the Supreme Court provides a definition that was what the court intended.[2] We can do no less when the legislature adopts a definition to meet a special situation. Repetition is often better than an explication.

The only complaint of the appellant is that in its opinion the trial court ruled out a necessity that the judgment of the appellee be a "good and well reasoned business judgment." The use of "well" implies a standard of excellence a degree above good faith or

---

[2] The subject was insanity over which we were advised the Supreme Court labored to draft an appropriate and brief definition. *State* v. *Staten* (1971), 25 Ohio St. 2d 107, 54 O.O. 2d 235, 267 N.E. 2d 122.

just and reasonable cause in the circumstances of this case.

Our conclusion is that in the instant case, the decision to terminate the franchise was not arbitrary and was made in good faith for fundamental business reasons and for just cause.

It was not necessary for the trial court to otherwise quantify the degree of wisdom or merit exercised by the appellee in reaching its decision. The judgment of the trial court being correct, the rationale or rhetoric of the opinion, repeated in the judgment entry, was irrelevant.

The assignment of error is denied. The judgment will be affirmed.

*Judgment affirmed.*

WOLFF and FAIN, JJ., concur.

ROBERT L. MCBRIDE, J., retired, of the Second Appellate District, sitting by assignment.