**AB & B, INC., Appellee,**

**v.**

**BANFI PRODUCTS, INC., Appellant.**

[Cite as *AB & B, Inc. v. Banfi Products, Inc.* (1991), 71 Ohio App.3d 650.]

Court of Appeals of Ohio,
Lake County.

No. 90–L–14–006.

Decided April 2, 1991.

*I. James Hackenberg,* for appellee.

*M. Neal Rains, Rita A. Bartnik* and *Edward Wood Dunham,* for appellant.

---

CHRISTLEY, Presiding Judge.

Appellant, Banfi Products, Inc., terminated the distributorship of appellee, AB & B, Inc. As a result, appellee filed an action asking for money damages and injunctive relief. The preliminary injunction was denied, since appellee failed to show irreparable harm.

The parties had an oral agreement giving appellee the non-exclusive right to distribute Riunite wine and six other brands of wine. In 1985, appellee stopped ordering wine directly from appellant. Nevertheless, appellee continued to purchase wine from appellant through pooling arrangements with other distributors.

In 1986, appellee experienced a severe decline in demand for Riunite, mostly attributable to a recall of Riunite wine due to contamination problems in the fall of 1985. Appellant then decided to terminate six Ohio distributorships, including appellee's, as of late May 1987.

Appellant had previously notified appellee of the termination with the following letter:

"You are aware that Banfi's corporate policy requires our distributors to maintain no less than a 60–day inventory of products. Not only are you out

of stock on most items in our line, but our records indicate that the last activity on your account was a credit in January of 1986, and your last purchase was in April of 1985.

"Your lack of interest in and support of the Banfi line leaves us no alternative but to terminate our distributorship relationship with you, effective sixty (60) days from your receipt of this notice."

Although appellee responded to the letter asking for a meeting and an opportunity to explain the situation, appellant terminated the franchise relationship.

After a two-day bench trial, the trial court found appellant in violation of the Ohio Alcoholic Beverage Franchise Act, R.C. 1333.84 and 1333.85.

Subsequently, appellant filed this appeal alleging the following three assignments of error:

"1. The trial court erred to the prejudice of defendant-appellant in finding for plaintiff-appellee on the issue of liability.

"2. The trial court erred to the prejudice of defendant-appellant in awarding damages where plaintiff-appellee had failed to take any steps to mitigate its damages.

"3. The trial court erred to the prejudice of defendant-appellant in awarding damages in the amount of $84,717.00."

■ In appellant's first assignment, it contends that the trial court erred in finding appellant liable. Specifically, it argues that the trial court erred, as a matter of law, in finding it had not acted in "good faith" and that it did not have "just cause" for terminating appellee's wine distributorship.

This requires an analysis of both good faith and just cause, since showing a violation of *either* section would entitle appellee to recover reasonable damages. R.C. 1333.87.

The Alcoholic Beverages Franchise Act in R.C. 1333.82 *et seq.* is applicable. "Good faith" is defined by R.C. 1333.82(E):

" 'Good faith' means the duty of any party to any franchise, and all officers, employees, or agents thereof, to act in a fair and equitable manner toward each other so as to guarantee each party freedom from *coercion* or *intimidation;* except that recommendation, endorsement, exposition, persuasion, urging, or argument shall not be deemed to constitute a lack of good faith or coercion." (Emphasis added.)

Note that the statute is very precise in confining violations of good faith to coercion or intimidation.

Moreover, the statute further provides that a distributor is to act in good faith in cancelling or failing to renew a franchise. R.C. 1333.84(A).

In accordance with the statutory language, courts have focused on the elements of coercion and intimidation when determining whether a manufacturer or distributor has acted in good faith. *Francis A. Bonanno, Inc. v. ISC Wines of California* (1989), 56 Ohio App.3d 62, 564 N.E.2d 1105; *Excello Wine Co. v. Monsieur Henri Wines* (S.D.Ohio 1979), 474 F.Supp. 203, 209; *Rocco Wine Distributors v. Pleasant Valley Wine* (N.D.Ohio 1984), 596 F.Supp. 617, 620. In *Bonanno,* the court noted that the legislature imposed a "definition to meet this specific situation." *Id.,* 56 Ohio App.3d at 65, 564 N.E.2d at 1108. Since the court could find "no evidence of coercion or intimidation," it found no violation of R.C. 1333.84(D).

 As appellant correctly asserts, the presence of coercion or intimidation is necessary to support a finding of bad faith. First, appellee did not allege in its complaint that any coercion or intimidation existed. We find no evidence in the record of coercion or intimidation. Although the trial court found in its opinion and judgment entry that appellant's "decision to terminate the franchise agreement * * * was not made in good faith," there was no evidence or allegation of coercion or intimidation to support this conclusion. The fact that appellant's premise for termination was faulty and that appellant failed to attempt to reconcile before the cancellation does not constitute coercion or intimidation. Since there was no evidence to support a finding that appellant lacked good faith, appellant's argument as to this aspect of the first assignment has merit.

As appellant's second contention, appellant argues that the trial court erred in finding that it terminated the franchise agreement without just cause.

R.C. 1333.85 states:

"No manufacturer or distributor shall cancel or fail to renew a franchise or substantially change a sales area or territory without the prior consent of the other party for *other than just cause* and without at least sixty days' written notice to the other party setting forth the reasons for such cancellation, failure to renew, or substantial change." (Emphasis added.)

Unlike for good faith, the statute fails to provide any definition for "just cause."

 In *Bonanno, supra,* 56 Ohio App.3d at 66, 564 N.E.2d at 1109, the Second Appellate District formulated a test for just cause:

" * * * [T]he issue of just cause is whether the manufacturer commits acts of actual coercion or intimidation, or, in the alternative, whether such acts

were honest and reasonable business decisions of any one of the acts authorized in the applicable sections of the statute."

The *Bonanno* court also looked to *Caral Corp. v. Taylor Wine Co., Inc.* (July 15, 1980), S.D.Ohio No. C–1–80–215, unreported, to define "just cause." The court in *Caral Corp.* found a manufacturer should remain free to exercise business judgment in determining whether to cancel a franchise agreement. This business judgment need not be a good one or a well-reasoned one. "The only legal requirement is that the decision not be arbitrary and without reason." *Bonanno, supra,* 56 Ohio App.3d at 63, 564 N.E.2d at 1106, quoting *Caral Corp., supra.*

Specifically, in *Bonanno*, the court found that appellant's only complaint was that the distributor did not make a good or well-reasoned business decision which was beyond the court's review. There was evidence in that case that sales for the *exclusive* franchise holder in Ohio had dropped significantly while sales had risen nationally. In addition, there was little evidence the franchise holder had promoted its products. Before the termination occurred, the distributor met with the franchise holder to discuss the problem. At that time, the franchise holder was put on notice that unless sales improved, the franchise would be terminated. It was only after sales dropped further that the franchise was terminated. Given the above evidence, the *Bonanno* court concluded that the decision to terminate the franchise was not arbitrary and was made for fundamental business reasons, and, thus, for just cause.

Just cause was also analyzed in *Excello, supra.* Without defining "just cause," the *Excello* court determined that the following factors constituted just cause: continuous late payments (the court specifically noted that late payments, standing alone, might not be an overwhelming cause to terminate a relationship), the franchise holder's antagonistic attitude, conflicting business philosophies and refusal to sell many of the distributor's wine labels. *Id.,* 474 F.Supp. at 210. The court held that the termination was for just cause, and that the court would not second-guess what was fundamentally a business judgment.

In the present case, appellant did not demonstrate just cause. Initially, appellant notified appellee by letter of the termination, stating that appellee violated appellant's policy of maintaining "no less than a 60–day inventory of products," and lacked interest in and support of the Banfi line. The testimony of both appellant's and appellee's witnesses did not support these conclusions.

The owner of appellee corporation testified that appellant never told him of its "60–day" supply requirement. Two of appellee's representatives testified that they had mentioned the requirement to appellee. The central

division director testified that the "90–day" requirement applied only to Riunite wine. As the trial court notes, the inventory policy was apparently not so significant for appellee to reduce the policy to writing and send it to all its distributors. Moreover, the policy was not so clear that its representative could testify as to whether a "60 or 90–day" inventory was required. In addition, there was evidence which indicated that other distributors were not terminated when they were in violation of appellant's "60–day" policy.

Even if the existence of the policy had been established, appellee's inventory reports for the period at issue indicated that it *had* an overall average of a ninety-six-day inventory, despite three months in which the closing inventories were below the "60–day" level.

Appellant also cited a lack of interest by appellee in supporting appellant's other lines. In support, appellant stated that appellee failed to send a representative to appellant's meetings. There was no evidence, however, that such meetings were mandatory. There was also testimony that the purpose of the meetings was promotional rather than informative. Moreover, appellant provided appellee with notebooks containing the information from the meetings.

Another reason stated for the termination was a lack of direct purchasing as appellee did most of its purchasing through pooling arrangements between appellee and other distributors. There was no evidence indicating pooling was previously discouraged or was against any of appellant's policies.

Appellant also argues that the trial court erred in concluding that appellant was required to provide appellee with an opportunity to cure before termination. Appellant is misconstruing the comments of the trial court to the effect that there was no evidence showing appellee attempted to reconcile. We believe appellant misunderstood the trial court's intent. The court noted the failure to try to reconcile as one more factor which showed there was no just cause; nowhere in the opinion does the trial court state that this factor is in any way determinative or a necessary *element* of just cause.

Given the above facts, the trial court did not err in finding appellant lacked just cause to terminate the agreement. Since appellant would be liable for damages if there were a finding of either a lack of good faith *or* a lack of just cause, appellant's first assignment is without merit.

In appellant's second assignment, it is alleged that the trial court erred to the prejudice of appellant in awarding damages where appellee had failed to take any steps to mitigate. Regarding mitigation, the trial court held that due to the popularity of Riunite wine, appellee was not required to mitigate as no other single brand could compete for its market share.

■ While it is true that a plaintiff is not permitted to remain idle and thus enhance its damages, *Henry v. Akron* (1985), 27 Ohio App.3d 369, 27 OBR 465, 501 N.E.2d 659, "the rule * * * does not require a party to make extraordinary efforts, or to do what is unreasonable or impracticable * * *." *Martin Co. v. Roulette Pontiac–Cadillac–GMC, Inc.* (Dec. 9, 1988), Lake App. No. 13–054, unreported, at 5, 1988 WL 131955, quoting 30 Ohio Jurisprudence 3d (1981) 28, Damages, Section 17.

■ Despite appellant's assertion that failure to mitigate results in nonrecovery, the actual rule is a party is precluded from recovering damages that could have been avoided by mitigating. 30 Ohio Jurisprudence 3d (1981) 28, Damages, *supra.*

■ Despite the absence of any evidence that appellee attempted to mitigate, based on the following, appellee was not required to do so. There was testimony that Riunite wine commanded eighty to ninety percent of the market share in its class. Additionally, one of the owners of the appellee corporation testified that " * * * it was fruitless to replace Riunite with another brand * * * if I were lucky enough to get all of those brands [the one hundred plus brands that compete with Riunite] * * * which would be impossible, it would still only be ten percent of the volume of that category."

Given the above evidence, the trial court's conclusion that appellee was not required to mitigate was supported by some competent, credible evidence.

■ Finally, in appellant's third assignment, it is contended that the trial court erred in awarding damages in the amount of $84,717. Specifically, appellant argues that the award is against the manifest weight of the evidence.

"The law in Ohio is clear that an appellate court will not disturb the findings of the trier of fact unless they are against the manifest weight of the evidence. *Landis v. Kelly* (1875), 27 Ohio St. 567; *State ex rel. Shady Acres Nursing Home, Inc. v. Rhodes* (1983), 7 Ohio St.3d 7 [7 OBR 318, 455 N.E.2d 489]. Moreover, if the judgment of the trial court is supported by some competent, credible evidence, it will not be reversed by a reviewing court as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction Co.* (1978), 54 Ohio St.2d 279 [8 O.O.3d 261, 376 N.E.2d 578]; *State ex rel. Shady Acres Nursing Home, Inc., supra.*" *Kinney v. Mathias* (1984), 10 Ohio St.3d 72, 73–74, 10 OBR 361, 361–363, 461 N.E.2d 901, 902–904.

At trial, one of appellee's owners testified that appellee's financial records indicated that from 1982 to 1986, appellee's annual net profit from its sales of appellant's wines was $28,239 per year. Appellee's financial statements were

also entered into evidence. These figures detailed average sales, gross profits, administrative and selling costs.

Moreover, appellee submitted evidence of future damages. Included in that evidence was a demonstration of what appellee would have received if it had been permitted to continue its franchise, and the costs that it would have incurred pursuing those profits. Based on the evidence submitted, the trial court concluded that future profits beyond one year could not be substantiated. As a result, the trial court awarded only one year of future damages.

It is at this point in the trial judge's reasoning that we part company. The same reason that justified awarding only one year of future damages required a reduction in the averaging process of the seven previous years which produced the $28,239 average net profit figure. The earlier "fat" years were clearly not representative of the three years for which damages and future profits were allowed by the court. An average of only the last three years, 1984, 1985 and 1986, would provide a more realistic expectation as to damages and future profits.

We, therefore, reverse and remand for a determination by the trial court of this amount, and affirm in all other respects.

*Judgment reversed in part*
*and cause remanded.*

JOSEPH E. MAHONEY and FORD, JJ., concur.