**DAYTON HEIDELBERG DISTRIBUTING CO., INC., et al., Plaintiffs,**

v.

**VINEYARD BRANDS, INC., Defendant.**

No. C–3–00–220.

United States District Court, S.D. Ohio, Western Division.

July 18, 2000.

Alfred John Weisbrod, Weisbrod Law Offices, Dayton, OH, for Plaintiffs.

William Breck Weigel, Phillip Jude Smith, Michael C. Surrey, Vorys Sater Seymour & Pease, Cincinnati, OH, for Defendants.

## DECISION AND ENTRY OVERRULING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION (DOC. # 1)

RICE, Chief Judge.

The Plaintiffs are distributors in the Dayton and Cincinnati, Ohio, areas of wine imported by the Defendant from foreign wineries. By nearly identically worded letters dated April 28, 2000, the Defendant informed that Plaintiffs that it was canceling the distributorship relationships between parties, with the cancellation to become effective 60 days after receipt of the letters.[1] The Plaintiffs have brought this

---

1. Defendant had previously sent letters, under date of March 20, 2000, to the Plaintiffs, informing them that the distributorship agreements were terminated and that the cancella-

litigation, alleging that the Defendant's actions in that regard violate the Ohio Alcoholic Beverages Franchise Act "(OABFA"), Ohio Revised Code §§ 1333.82–1333.87. Among other relief, the Plaintiffs have requested a preliminary injunction, preventing the cancellation from becoming effective. On June 27, 2000, this Court conducted an oral and evidentiary hearing on the Plaintiffs' request for such injunctive relief. On Thursday, June 29, 2000, it orally notified counsel, upon the record, that said motion was overruled. It now sets forth its reasoning behind said ruling in written form.

*I. Findings of Fact*

1. Plaintiff Dayton Heidelberg Distributing Co., Inc. ("Dayton Heidelberg") is the largest distributor of wines in the state of Ohio, and one of the largest distributors of beer in this state. Plaintiff Ohio Valley Wines Company ("Ohio Valley") is a division of Dayton Heidelberg. Dayton Heidelberg and Ohio Valley distribute many popular, high volume wines, such as Gallo, Fetzer, Mondavi, Sutter Home, Glen Ellen and Berringer.

2. Defendant is an importer of wines manufactured by foreign wineries. The wines imported by Defendant fall into two categories, to wit: fine wines which are quite expensive and other high quality wines which are known for their value.

3. The Plaintiffs' sales of wines imported by the Defendant constitute at most .1% of their total sales.

4. Plaintiffs and their predecessor, Allied Wines, have distributed the wines imported by Defendant since at least 1983 or 1984.

5. In 1994, Dayton Heidelberg purchased Allied Wines and, thus, began to distribute Defendant's wines, with the Allied Division of Dayton Heidelberg as the sole and exclusive distributor in the Dayton area and

Ohio Valley as the sole and exclusive distributor for the Cincinnati area. At the time that Dayton Heidelberg acquired Allied Wines, Defendant expressed concern about its ability to perform satisfactorily, because Dayton Heidelberg distributed large quantities of popular wines, while the Defendant imported different types of wines (i.e., expensive wines which are not sold in large volumes). The Defendant also indicated that increased sales of its products were needed. Plaintiffs assured the Defendant that they could distribute its wines and that sales would increase.

6. In early 1996, Defendant became disenchanted with Plaintiffs' performance as distributors of its wines and threatened to terminate the distributorship relationships. After receiving assurances from Plaintiffs that performance would improve, the Defendant decided not to terminate the distributorships.

7. Defendant sets goals for Plaintiffs' sales of the various brands of wine it imports in each particular fiscal year. A fiscal year runs from the beginning of March in one year, through the end of February the next year.

8. The Plaintiffs failed to meet their goals for the sale of Defendant's wines for fiscal year 1996 (i.e., the period from March 1, 1996, through February 28, 1997).

9. After Defendant had set Ohio Valley's goals for fiscal year 1998, Ohio Valley unilaterally lowered those goals. Some of the unilaterally established goals called for Ohio Valley to sell less wine in fiscal year 1998, than had been its goal for fiscal year 1997. Ohio Valley failed to meet the goals it had unilaterally established for fiscal year 1998.

10. For fiscal year 1999, Defendant set goals for Ohio Valley which were identical to the goals that Ohio Valley had unilaterally set for itself for fiscal year 1998. Nevertheless, Ohio Valley unilaterally reduced

tion would be effective in 60 days. The April 28th letters rescinded those under date of

March 20th.

its goals for fiscal year 1999 and, once again, failed to meet the reduced goals.

11. By reducing its goals from one fiscal year to the next, Ohio Valley has implicitly told its sales staff that reduced sales of Defendant's wines are acceptable.

12. Dayton Heidelberg failed to meet its goals for the sale of wines imported by the Defendant for fiscal years 1998 and 1999.

13. In fiscal year 1996, Dayton Heidelberg's volume of sales of Defendant's wines was $105,824. In that same fiscal year, Ohio Valley's volume of sales of Defendant's wines was $107,726. By fiscal year 1999, Dayton Heidelberg's sales had dropped to $90,580, while Ohio Valley's sales had decreased more precipitously to $73,921.

14. During the period from fiscal year 1996, through fiscal year 1999, while the Plaintiffs were failing to meet their goals and their sales of Defendant's wines were declining, the sales of Defendant's other distributors in the state of Ohio were increasing. Indeed, given that the economy was strong between 1996 and 1999, sales were generally robust during that period.

15. By letters dated April 28, 2000, Defendant terminated the Plaintiffs' distributorships, due to inadequate sales and failure to increase sales. The cancellation was to become effective 60 days after receipt of the letters.

16. The foregoing evidence demonstrates that the Defendant has exercised its business judgment in deciding to terminate the Plaintiffs' distributorships and that the exercise of that business judgment was neither arbitrary nor without reason. Plaintiffs sales have consistently decreased, while those of other distributors of Defendant's products in Ohio have increased during the same period. Therefore, based upon the evidence presented, the Court finds that the Defendant had just cause to terminate the distributorships.

## II. Opinion

In *Six Clinics Holding Corp., II v. Cafcomp Systems,* 119 F.3d 393, 399–400 (6th Cir.1997), the Sixth Circuit restated the familiar four factors a District Court must consider when ruling on a motion for preliminary injunction:

The factors to be considered by a district court in deciding whether to grant a preliminary injunction are well-established: "(1) the likelihood that the party seeking the preliminary injunction will succeed on the merits of the claim; (2) whether the party seeking the injunction will suffer irreparable harm without the grant of the extraordinary relief; (3) the probability that granting the injunction will cause substantial harm to others; and (4) whether the public interest is advanced by the issuance of the injunction." [*Washington v. Reno,* 35 F.3d 1093, 1099 (6th Cir. 1994) ]. A district court is required to make specific findings concerning each of the four factors, unless fewer factors are dispositive of the issue. *See In re DeLorean Motor Co.,* 755 F.2d 1223, 1228 (6th Cir.1985).

\* \* \* \* \* \*

The four considerations applicable to preliminary injunction decisions are factors to be balanced, not prerequisites that must be met. *See Washington,* 35 F.3d at 1099. No single factor will be determinative as to the appropriateness of equitable relief, *see In re DeLorean Motor Co.,* 755 F.2d at 1229, and "the district court's weighing and balancing of the equities is overruled 'only in the rarest of cases.' " *In re Eagle–Picher,* 963 F.2d at 858 (quoting *N.A.A.C.P. v. City of Mansfield, Ohio,* 866 F.2d 162, 166 (6th Cir.1989)).

*Id.* at 399–400. *See also, Memphis Planned Parenthood, Inc. v. Sundquist,* 175 F.3d 456, 460 (6th Cir.1999). Although the Sixth Circuit defines the third branch of the four-part test in terms of harm to others, the focus is on the harm that a defendant will suffer if the requested in-

junctive relief is granted. It is with this factor that courts have traditionally balanced the equities (i.e.), the harm that the plaintiff will suffer in the absence of an injunction is balanced against that which will befall the defendant if same is granted. *See Southern Ohio Coal Co. v. United Mine Workers of America,* 551 F.2d 695 (6th Cir.1977). With the foregoing standards in mind, this Court turns to the four factors it must consider when ruling on Plaintiffs' request for preliminary injunctive relief.

*A. Substantial Likelihood of Success on the Merits*

 Plaintiffs claim that the Defendant's cancellation of the distributorship relationships violates Ohio Revised Code § 1333.84(A) and § 1333.85, which, *inter alia,* prohibit a manufacturer from canceling, without just cause, its agreement with a distributor.[2] As an initial matter, it cannot be questioned that the Plaintiffs are distributors, as that term is defined by the OABFA. *See* Ohio Rev.Code § 1333.82(C) (defining distributor as "any person who sells or distributes alcoholic beverages to retail permit holders in this state"). The term "manufacturer" is defined broadly by

that statute to include a person who "supplies alcoholic beverages to distributors in this state." Ohio Revised Code § 1333.82(B). Defendant, which does not dispute that it is a manufacturer, supplied alcoholic beverages to the Plaintiffs in this state.[3] The statute does not define just cause. In *AB & B, Inc. v. Banfi Products, Inc.,* 71 Ohio App.3d 650, 594 N.E.2d 1151 (1991), the court discussed the meaning just cause, as used in § 1333.84(A) and § 1333.85:

In *[Francis A. Bonanno v. ISC Wines of California,* 56 Ohio App.3d 62, 564 N.E.2d 1105 (1989) ], *supra,* 56 Ohio App.3d at 66, 564 N.E.2d at 1109, the Second Appellate District formulated a test for just cause:

" * * * [T]he issue of just cause is whether the manufacturer commits acts of actual coercion or intimidation, or, in the alternative, whether such acts were honest and reasonable business decisions of any one of the acts authorized in the applicable sections of the statute."

The *Bonanno* court also looked to *Caral Corp. v. Taylor Wine Co., Inc.* (July 15, 1980), S.D.Ohio No. C–1–80–215, unre-

---

**2.** As is indicated above, Defendant had previously sent letters to the Plaintiffs, under date of March 20, 2000, informing them that the distributorship agreements were terminated and that the cancellation would be effective in 60 days. Since those letters did not set forth the reason for the cancellation, the Plaintiffs, who filed this litigation shortly after they had received the March 20th letters, alleged that the Defendant had violated the portion of § 1333.85, which requires that a notice of cancellation include a statement of reasons for same. The April 28th letters, which included reasons why the Defendant was terminating the Plaintiffs' distributorships, rescinded those under date of March 20th; therefore, the Plaintiffs' request for injunctive relief, arising out of the failure of the March 20th letters to contain such reasons, is moot.

Section 1333.84(A) also imposes upon a manufacturer the duty of acting in good faith in its dealings with its distributors. Ohio courts have indicated that a manufacturer acts without good faith when it coerces or intimidates a distributor. *See AB & B, Inc. v. Banfi Products, Inc.,* 71 Ohio App.3d 650,

654, 594 N.E.2d 1151, 1153 (1991) (an cases cited therein). Herein, there was no evidence that the Defendant in any manner intimidated or coerced the Plaintiffs; therefore, the Defendant met its duty of acting in good faith in this regard.

**3.** In its post-hearing memorandum, Defendant states that the Plaintiffs have suggested that it is not a manufacturer, as that term is defined in § 1333.82(B). Simply put, such a suggestion would contradict the allegation in the Plaintiffs' Complaint that the Defendant is a manufacturer. Moreover, since the provisions of § 1333.84(A) and § 1333.85 limit the ability of manufacturers to terminate their distributors, the Plaintiffs would disprove their claim by demonstrating that the Defendant is not a manufacturer. In addition, the evidence demonstrated that the Defendant supplied wine to the Plaintiffs in the state of Ohio. For these reasons, this Court concludes that the Defendant is a manufacturer, as that term is defined by the OABFA.

ported, to define "just cause." The court in *Caral Corp.* found a manufacturer should remain free to exercise business judgment in determining whether to cancel a franchise agreement. This business judgment need not be a good one or a well-reasoned one. "The only legal requirement is that the decision not be arbitrary and without reason." *Bonanno, supra,* 56 Ohio App.3d at 63, 564 N.E.2d at 1106, quoting *Caral Corp., supra.* *Id.* at 654–55, 594 N.E.2d at 1153–54.

 Based upon *Banfi Products* and the cases cited therein, the Defendant had just cause to terminate the distributorships, as long as it has exercised its business judgment to reach that decision in a manner which was neither arbitrary nor without reason. The evidence has caused this Court to find that the Defendant exercised its business judgment and that it did not acted arbitrarily or without reason, when it decided to cancel the Plaintiffs' distributorships. Therefore, the Defendant acted with just cause.

The testimony by Shyvawn Licorish ("Licorish"), Defendant's District Manager for the states of Ohio, Michigan and Kentucky, and the exhibits introduced at the evidentiary hearing, showed that the Plaintiffs' performance as distributors was subpar. For instance, during the period from fiscal year 1996, through fiscal year 1999, the Plaintiffs' sales of the Defendant's wines dropped, while the performance of the Defendant's other distributors in the state of Ohio increased. Indeed, given that the economy was strong between 1996 and 1999, wine sales were generally robust during that period. Moreover, neither Plaintiff met its goals for the years 1996, 1998 and 1999. In addition, Ohio Valley unilaterally lowered its goals for 1998 and 1999, yet failed to meet those lowered goals. During his cross-examination of Licorish, Plaintiffs' counsel was able to chip away at her testimony. For instance, Licorish indicated on direct examination that the sales of wine in the Cincinnati area

(Ohio Valley's territory) should be 50% of those for Defendant's Cleveland distributor. Since cross-examination demonstrated that the area serviced by the Cleveland distributor was much larger, covering all of northern Ohio (including the cities of Toledo, Cleveland, Akron and Youngstown), this Court has not relied upon Licorish's testimony, that Ohio Valley's sales in Cincinnati should be 50% of those of the Cleveland distributor, to support its finding that the Defendant had just cause to cancel the distributorships. The cross-examination of Licorish did not, however, weaken the core component of her testimony, which was amply supported by documentary evidence, that the Plaintiffs' sales decreased at a time when other distributors were increasing their sales. Merely casting doubt on some areas of her testimony, however, did not cause this Court to conclude that Plaintiffs had demonstrated a probability or substantial likelihood of success on the merits of this litigation. In sum, the Defendant terminated the Plaintiffs' distributorships, because of their poor performance and, in so doing, exercised its business judgment in a manner which was neither arbitrary nor without reason.

Plaintiffs presented evidence during the hearing that the Defendant has offered its distributors a price support plan which they contend violates Ohio Department of Liquor Control regulations. As amended, effective September 1, 1997, Ohio Administrative Code § 4301:1–1–49(K) provides that depletion allowance programs on the sale of wine are no longer permitted. Prior to that amendment, § 4301:1–1–49(K) allowed such programs. The Plaintiffs contend that the Defendant's price support plan constitutes a prohibited depletion allowance program, while the Defendant disputes that assertion. Under Ohio Revised Code § 1333.85(B)(1), the failure or refusal of a distributor to engage in an act or a practice which violates a rule of the state of Ohio does not constitute just cause for the cancellation of a distributorship. Therefore, if the Defendant was terminat-

ing the Plaintiffs' distributorships, because they had refused to participate in the price support plan, and, further, if that plan constituted a prohibited depletion allowance, the Defendant would be acting without just cause. However, the evidence demonstrates that the Defendant has decided to terminate the Plaintiffs' distributorships, because of poor performance (their declining sales over a period of years when other distributors were increasing their sales), rather than because they refused to participate in the price support plan. Therefore, even if the price support plan constitutes a prohibited depletion allowance program, § 1333.85(B)(1) would not prevent this Court from finding that the Defendant had just cause to terminate the Plaintiffs' distributorships.

Accordingly, the Court concludes that the Plaintiffs have failed to establish a substantial likelihood of success on the merits of their claim that the cancellation of the distributorships will violate § 1333.84(A) and § 1333.85.

### B. Irreparable Harm

■■■ Under the OABFA, the Plaintiffs will be able to recover any damages they may suffer, if it is determined, after a trial on the merits, that the Defendant's cancellation of the distributorships violated § 1333.84(A) and § 1333.85. See Ohio Rev. Code § 1333.87. In EBSCO Industries, Inc. v. Lilly, 840 F.2d 333 (6th Cir.1988), the court noted that "the Sixth Circuit has held generally that an injunction may not issue if there is an adequate remedy at law. Gilley v. United States, 649 F.2d 449, 454 (6th Cir.1981); Detroit Newspaper Publishers Ass'n v. Detroit Typographical Union No. 18, 471 F.2d 872, 876 (6th Cir.1972); Travis v. Pennyrile Rural Elec. Co-op., 399 F.2d 726, 729 (6th Cir.1968)." Id. at 335. See also, CSX Transp., Inc. v. Tennessee State Bd. of Equalization, 964 F.2d 548, 551 (6th Cir.1992). Thus, the Sixth Circuit has held that "a plaintiff's harm is not irreparable if it is fully compensable by money damages." Basicomputer Corp. v. Scott, 973 F.2d 507, 511 (6th Cir.1992). However, an injury is not fully compensable by money damages, where the nature of the plaintiff's injury is such that damages would be difficult to calculate.[4] Id. Herein, given that historical records are available for Plaintiffs' sales and expenses, it would be quite simple to calculate the damages they suffered as a result of the cancellation of the distributorships. Accordingly, the Plaintiffs will not suffer irreparable injury in the absence of a preliminary injunction. See also, Excello Wine Co. v. Monsieur Henri Wines, Ltd., 474 F.Supp. 203, 210 (S.D.Ohio 1979) (indicating that plaintiff, whose wine distributorship was being terminated, could not show irreparable harm, sufficient to support the granting preliminary injunction, since plaintiff could be compensated with monetary damages).

### C. Harm to Others and Balancing the Harms

■■ If a preliminary injunction is granted, the Defendant will suffer substantial harm which would be difficult, if not impossible, to quantify. The evidence dem-

---

4. In Basicomputer, the Sixth Circuit noted that the loss of customer goodwill can constitute an irreparable injury, since the damages flowing from such a loss are difficult to calculate. 973 F.2d at 511. Herein, Larry Chmiel and Michael Monnin (respectively, the sales managers of the Allied Division and Ohio Valley) testified that the loss of the right to distribute the Defendant's wines would harm the Plaintiffs' reputations, since their customers had come to expect the availability of those high premium wines on their shelves. That testimony does not cause the Court to find that the Plaintiffs would lose goodwill, if the distributorships were terminated. The evidence was that the Defendant's wines constituted an insignificant portion of the Plaintiffs' total sales. Moreover, there was also evidence that the Plaintiffs had other wines in their portfolios which could replace those of the Defendant. In addition, given the Plaintiffs' steadily declining sales of the Defendant's wines, those products cannot have been overly important to either the Plaintiffs or their customers.

onstrated that the Plaintiffs have not shown the interest or the ability to increase their volume of sales of Defendant's wines. Indeed, rather than increasing their sales of Defendant's wines, the Plaintiffs' sales have steadily decreased. If the requested injunction is granted, the Defendant will be deprived of the opportunity to replace the non-performing distributors with one or more who could rebuild the sales of Defendant's wines in the Cincinnati and Dayton areas. The harm suffered by the Defendant, if an injunction were found to be erroneously granted, would be difficult if not impossible to quantify. Given that any injury the Plaintiffs will suffer can be calculated and compensated through an award of damages, the balance of harms tips in favor of denying the requested injunctive relief. In sum, the Court concludes that the harm to the Defendant, if the requested preliminary injunction is granted, is greater than any harm which the Plaintiffs will suffer if such relief is denied.

## D. Public interest

The public interest neither favors nor disfavors the granting of the requested injunctive relief.

## III. Conclusions of Law

1. This Court has subject matter jurisdiction over this controversy pursuant to 28 U.S.C. § 1332 and § 1441.

2. Plaintiffs are distributors, as that term is defined by the OABFA.

3. Defendant is a manufacturer, as that term is defined by the OABFA.

4. Sections 1333.84(A) and 1333.85 prohibit a manufacturer from canceling a distributorship agreement without just cause. A manufacturer acts with just cause, as long as it has exercised its business judgment to cancel a distributorship in a manner which is neither arbitrary nor without reason.

5. The evidence has caused this Court to find that the Defendant acted with just cause when it canceled the Plaintiffs' distributorships. Therefore, the Plaintiffs have failed to show a probability or substantial likelihood of success on the merits of their claim that the Defendant has canceled those distributorships in violation of §§ 1333.84(A) and 1333.85.

6. The Plaintiffs have failed to demonstrate that they will suffer irreparable harm, if the requested preliminary injunction is denied.

7. The Defendant will suffer substantial harm, if the requested preliminary injunction is granted.

8. Given that the Plaintiffs have failed to establish a substantial likelihood of success on the merits or that they will suffer irreparable injury in the absence of an injunction and, further, since the Defendant will suffer substantial harm, if the injunction is granted, balancing the familiar four factors leads to the inevitable conclusion that the Plaintiffs are not entitled to the requested injunctive relief.

Accordingly, based upon the foregoing, the Court overrules the Plaintiffs' Motion for Preliminary Injunction (Doc. # 1).