DAYTON HEIDELBERG DISTRIBUT-
ING COMPANY, INC.; and Ohio Val-
ley Wine Company, Plaintiffs–Appel-
lants,

v.

VINEYARD BRANDS
INCORPORATED, Defendant–Appellee.

No. 01–4061.

United States Court of Appeals,
Sixth Circuit.

Aug. 25, 2003.

Russell S. Sayre, Taft, Stettinius & Hollister, Cincinnati, OH, for Plaintiffs–Appellants.

W. Breck Weigel, Phillip J. Smith, Vorys, Sater, Seymour & Pease, Cincinnati, OH, for Defendants–Appellee.

Before BOGGS and DAUGHTREY, Circuit Judges; and OBERDORFER, Senior District Judge.*

BOGGS, Circuit Judge.

Plaintiffs, Dayton Heidelberg Distributing Company, Inc., ("Heidelberg") and Ohio Valley Wine Company ("Ohio Valley"), appeal the district court's grant of summary judgment to defendant, Vineyard Brands Incorporated ("Vineyard"). Vineyard terminated the plaintiffs' wholesale wine distribution franchises and the plaintiffs sued Vineyard for violation of their rights under the Ohio Alcoholic Beverages Franchise Act ("OABFA"), Ohio Rev.Code, §§ 1333.82–87. The district court concluded that plaintiffs had failed to provide sufficient evidence to allow a jury to conclude that Vineyard's motive for termination was an impermissible one and

---

* The Honorable Louis F. Oberdorfer, Senior United States District Judge for the District of Columbia, sitting by designation.

therefore granted summary judgment. We affirm.

## I

Heidelberg is a wholesale distributor of wine covering, through its Allied division, the Dayton, Ohio, area. Ohio Valley is a wholesale distributor of wine covering the Cincinnati, Ohio, area. As Ohio Valley was at all times relevant to this litigation a wholly owned subsidiary of Heidelberg and asserts legally identical claims and arguments, they will here collectively be referred to as Heidelberg. Vineyard is an importer and nationwide marketer of estate-bottled wines. Heidelberg was Vineyard's exclusive distributor in the covered areas of the state of Ohio. In March 1996, Vineyard for the first time threatened to cancel Heidelberg's franchise for unsatisfactory sales performance, but relented on the basis of promises of improved performance. Nevertheless, over the following three years, Heidelberg's sales of Vineyard's products continued to decline.

During this period, Vineyard also operated a type of marketing program known as depletion allowances. Under this scheme, Vineyard would send invoices for the wine it shipped to Heidelberg reflecting a retail price higher than the intended retail price. Heidelberg would then sell the wine at the discounted price and Vineyard would compensate Heidelberg for the reduced revenue by paying depletion allowances. Effective September 1, 1997, Ohio, for reasons that remain mysterious, prohibited this practice. Heidelberg alleges that Vineyard nevertheless continued to send invoices reflecting a price higher than the intended retail price. Rather than participate in the now-unlawful depletion allowance scheme, Heidelberg would manually adjust the invoices to reflect the intended retail price. Heidelberg describes these changes, in effect giving it a discount for each unit it bought, rather than for each unit it sold as under a depletion allowance, as a still-lawful purchase allowance. Heidelberg did complain about the additional work in adjusting all of Vineyard's invoices. For its part, Vineyard appears to have accepted the changed invoices without over complaint for most of the period. Finally, however, Vineyard informed Heidelberg that, effective February 29, 2000, it would no longer accept these adjustments, which it described as "permanent post-offs."

On March 20, 2000, Vineyard informed Heidelberg that it would terminate its franchise within sixty days:

> As detailed in a series of communications between our companies over the past several years, [Vineyard] is not satisfied with the performance of [Heidelberg] due to inadequate sales volume, failure to increase sales and inadequate marketing. [Vineyard] has repeatedly advised your company of these shortcomings over an extended period of time and believe we have just cause for this termination.[1]

On March 31, Heidelberg alerted Vineyard to its contention that termination would be contrary to Ohio law. There was no reply from Vineyard. Eventually Vineyard transferred Heidelberg's former franchise to another of its Ohio franchisees.

On April 14, 2000, Heidelberg filed a verified complaint against Vineyard in the Court of Common Pleas for Montgomery

---

1. The quoted text did not appear in the March 20 notice of franchise cancellation, which did not explicitly state the reason for cancellation. Instead, it appeared in a longer April 28 letter from Vineyard to Heidelberg, sent after initiation of litigation. As the OABFA requires a notice of franchise cancellation to set forth the reason for cancellation, Ohio Rev.Code § 1333.85, the first notice may have been ineffective. Now, three years later, this issue is without consequence and neither party presses it.

County, Ohio. Heidelberg alleges (1) that Vineyard had cancelled its franchise without just cause, in violation of Ohio Rev. Code § 1333.84(A), (2) that Vineyard had withheld delivery of wine without reasonable cause, in violation of Ohio Rev.Code § 1333.84(D), and (3) that Vineyard had violated its duty, imposed by Ohio law on all parties to contracts, to act in good faith towards Heidelberg. Vineyard, a California corporation with principal place of business in Alabama, being sued by Heidelberg, two affiliated Ohio corporations with principal place of business in Ohio, for an amount in excess of the jurisdictional amount, removed the action to the United States District Court for the Southern District of Ohio. On September 4, 2001, the district court granted Vineyard's motion for summary judgment on all counts. The court concluded that Vineyard had provided ample evidence of a just cause for termination of the franchise, Heidelberg's unsatisfactory sales performance, while Heidelberg, despite more than a year's opportunity to conduct discovery, could only provide its own witnesses' speculation to support its allegation that Vineyard's motive was the refusal to participate in the unlawful depletion allowance scheme. The court therefore denied the first count. Furthermore, the court concluded that the only orders of Heidelberg that Vineyard did not fulfill were of back-ordered stock or occurred after the termination, both of which were reasonable causes, and therefore denied the second count. Finally, the court concluded that Heidelberg had not provided any evidence of intimidation or coercion to support its general claim of failure to deal in good faith, and therefore denied the third count. Before this court now is Heidelberg's timely appeal of that decision.

## II

■ Heidelberg is a distributor within the meaning of the OABFA. Ohio Rev. Code § 1333.82(C). Vineyard, while in fact merely an importer of wine, is nevertheless a manufacturer within the meaning of the OABFA. Ohio Rev.Code § 1333.82(B). A contractual relationship between a distributor and a manufacturer is a franchise within the meaning of the OABFA. Ohio Rev.Code § 1333.82(D). Ohio statute imposes special requirements on such manufacturers with respect to such franchises. "Notwithstanding the terms of any franchise, no manufacturer ... engaged in the sale and distribution of alcoholic beverages ... shall ... [f]ail to act in *good faith* or without *just cause* ... in cancelling ... a franchise." Ohio Rev. Code § 1333.84(A) (emphases added); *accord* Ohio Rev.Code § 1333.85 ("[N]o manufacturer ... shall cancel ... a franchise ... for other than just cause."). These provisions are enforceable against manufacturers by suit in the county court of common pleas. Ohio Rev.Code § 1333.87.

■ We turn first to the issue of just cause. While the OABFA does not contain a definition of that term, the Ohio courts and federal courts sitting in Ohio have determined it to be a requirement of minimum rationality and business purpose. "'Just cause' refers to the origin or reason that prompted an act." *Francis A. Bonanno, Inc., d/b/a Allied Wines*[2] *v. ISC Wines of Cal.*, 56 Ohio App.3d 62, 564 N.E.2d 1105, 1109 (1989). The OABFA "does not require business people to act irrationally or counter to their best interest." *Excello Wine Co. v. Monsieur Henri Wines*, 474 F.Supp. 203, 210 (S.D.Ohio 1979). "A manufacturer remains free to

---

**2.** This appears to be another of Heidelberg's divisions. A significant fraction of the entire case law on the OABFA consists out of actions brought by Heidelberg or its corporate alter egos against out-of-state wine manufacturers who decided to take their business elsewhere.

exercise a business judgment in determining to cancel or withhold a franchise." *Caral Corp. d/b/a Heidelberg Distrib. Co. v. Taylor Wine Co.*, 1980 U.S. Dist. LEXIS 17753, at *13 (S.D.Ohio July 15, 1980). A court "cannot second-guess that judgment, and the Ohio Act does not require it to do so." *Excello*, 474 F.Supp. at 210. Just cause requires merely a bare business judgment, and not even "good and well reasoned business judgment." *Bonanno*, 564 N.E.2d at 1109.

A frequently encountered just cause is unsatisfactory sales. "Failure of the franchisee to live up to national and state average levels furnishes a reasonable basis for dissatisfaction." *Caral*, at *13–14. And while unsatisfactory sales are a common, just cause of franchise termination, there can be just cause even while sales are increasing. *See Excello*, 474 F.Supp. at 210. For example, there was just cause when there were numerous late payments by the franchisee, the franchisee displayed an "antagonistic and even truculent attitude," and there was "fundamental conflict in business philosophy." *Ibid.* "The failure of a franchisee or distributor to perform the terms of an existing franchise which are relevant to the business relationship is a good cause for termination or failure to renew." *Caral*, at *13.

Only where the manufacturer's business dissatisfaction is entirely arbitrary is just cause lacking. *Caral*, at *13. For example, a franchisee's failure to maintain a sixty-day supply, when there is no reason to keep such supply, lack of interest by franchisee in supporting manufacturer's other lines, and failure to send a representative to manufacturer's meetings, when there was no indication that these were mandatory, were not just cause. *AB & B, Inc. v. Banfi Prods., Inc.*, 71 Ohio App.3d 650, 594 N.E.2d 1151 (1991). Nor is a reason "wholly unrelated to the business relationship of the parties" just cause. *Excello*, 474 F.Supp. at 210.

Under this standard, Vineyard had a classic case of just cause: Heidelberg's sales declined while those of other Ohio franchisees increased. Over the three years between Vineyard's first intimations to Heidelberg that it considered cancelling the franchise until Vineyard eventually did so, Heidelberg's sales of Vineyard's products declined from $213,580 to $164,501. During the same period, Vineyard's sales through other Ohio distributors grew from $622,133 to $787,549.[3] It was entirely rational and business-related for Vineyard to transfer the franchise to other Ohio franchisees who seemed to be performing better. Even if, as Heidelberg contends, it was not their fault that their sales were down, and even if, as may very well happen, the new franchisees have no more success than the old, this will not deprive Vineyard of just cause. *See Caral*, at *14 (finding just cause even when there is no evidence why the franchise's "performance was static to down as applied to the state and national averages" because a "manufacturer need not seek out the cause, but may rely on the result.").

### III

■ In addition to requiring just cause for terminations, the OABFA also imposes a broader duty of good faith. The Act defines good faith as

the duty of any party to any franchise, and all officers, employees, or agents of any party to any franchise, to act in a

---

3. Heidelberg does not dispute these summary numbers. Rather, it points to particular years or particular categories of product, in which its performance declined less or improved more than particular other franchises. Heidelberg gives no indication why these particular bright spots should be considered more reflective of its sales performance than the overall figures.

fair and equitable manner toward each other so as to guarantee each party freedom from coercion or intimidation; except that recommendation, endorsement, exposition, persuasion, urging, or argument shall not be considered to constitute a lack of good faith or coercion. Ohio Rev.Code § 1333.82(D). " 'Good faith' generally means an honest intention by a person to abstain from wrongdoing along with an absence of facts to the contrary." *Bonanno,* 564 N.E.2d at 1109. "The statutory definition of 'good faith' is a balanced explanation of what was intended in the franchise relationship." *Ibid.* "[T]he statute is very precise in confining violations of good faith to coercion or intimidation," *Banfi,* 594 N.E.2d at 1153, "accomplished by express or implied threats of termination." *Excello,* 474 F.Supp. at 209. The existence of coercion or intimidation is determined by whether the act was undertaken "simply for some business motive" or there was "an ulterior or intimidating motive." *Caral,* at *12–13. While the OABFA "prohibits acts of coercion and intimidation[,] it authorizes non-offensive and non-threatening acts of reasonable business aggressiveness as acceptable." *Bonanno,* 564 N.E.2d at 1109. Even if the manufacturer's "premise for termination [is] faulty" and the manufacturer "fail[s] to attempt to reconcile before the cancellation," this "does not constitute coercion or intimidation." *Banfi,* 594 N.E.2d at 1153.

■ Under this standard, Vineyard acted in good faith. While Vineyard did, over the period from 1996 through 1999, threaten to terminate the franchise, not every threat constitutes intimidation or coercion. Here, Vineyard threatened termination for a business motive-the declining sales of Heidelberg. Even if Vineyard had been wrong about Heidelberg's culpability on this point, this would not have affected its good faith. *See Banfi,* 594 N.E.2d at 1153. Terminating a franchise for this economic reason constitutes acting in good faith.

*See Bonanno,* 564 N.E.2d at 1108 (finding good faith where manufacturer terminated franchise for "substantial and continued decline of business"). Heidelberg's claim that Vineyard violated the general duty on contracting parties under Ohio law to act in good faith was, for the same reason, also properly denied.

■ Heidelberg's principal counter-argument rests upon the allegation that Vineyard's actual motive for the termination of the franchise was Heidelberg's refusal to implement an unlawful depletion allowance program. Effective September 1, 1997, "[d]epletion allowance programs [were] prohibited." Ohio Admin. Code § 4301:1-1-43(K). Under the OABFA, "[t]he failure or refusal on the part of either party to engage in any act or practice which would result in a violation of ... any law or rule of this state ... shall not constitute just cause for cancellation of ... a franchise." Ohio Rev. Code § 1333.85(B)(1). Heidelberg points to the Vineyard's practice of continuing to send invoices reflecting a depletion allowance even after September 1, 1997, and Vineyard's notice that it would no longer allow Heidelberg to adjust these invoices less than a month before the franchise cancellation as evidence of Vineyard's impermissible motive. Moreover, Heidelberg argues that even if Vineyard had mixed motives, summary judgment for Vineyard was inapporpriate. It supports this argument with reference to *Marquis v. Chrysler Corp.,* 577 F.2d 624, 632–33 (9th Cir.1978), which held that a franchised automobile dealer's failure to meet a sales quota set by the manufacturer, taken alone, did not establish that manufacturer's action in terminating franchise could not, as matter of law, violate the statutory requirement of good faith, defined in language nearly identical to that of the OABFA, under the Automobile Dealers' Day in Court Act, 15 U.S.C. §§ 1221–1225.

The district court rejected this argument on the factual basis that there was no evidence of Vineyard's prohibited motive apart from allegations by Heidelberg's managers. As, even if we accept *Marquis,* Heidelberg's legal theory fails for multiple legal reasons, we need and do not resolve this factual issue. First, we note that the OABFA merely states that refusal to participate in an illegal scheme is not *itself* just cause. It does not state, contrary to Heidelberg's reading, that such an impermissible motive will vitiate an otherwise-existing independent just cause. Nor does *Marquis* so hold. *Marquis* merely holds that the existence of a just cause for a franchise termination does not, as a matter of law, force the conclusion that the manufacturer acted in good faith in its general dealings with the franchisee. If there is independent evidence that the manufacturer used intimidation or coercion, the existence of just cause for termination will not save the manufacturer. The reasoning of the court below was entirely consistent with this holding; it independently concluded that there was just cause and that Vineyard acted in good faith. Therefore, *Marquis* will not avail Heidelberg.

■■■ Heidelberg's claim under Ohio Rev.Code § 1333.84(D), prohibiting a manufacturer from "[w]ithout reasonable cause, withhold[ing] delivery of alcoholic beverages ordered by a distributor," also fails. As the court below concluded, Heidelberg's orders not immediately filled by Vineyard were either of out-of-stock items or occurred after Vineyard's termination of the franchise. With respect to the former, Heidelberg, despite ample opportunity, failed to contest Vineyard's factual claim by introducing evidence, for example, that the items were not actually out of stock, or that Vineyard allocated items in short supply to other Ohio franchises in a discrimi-

natory manner. Accepting this factual predicate, there is no argument, and Heidelberg does not attempt to raise one, that unavailability is not a reasonable cause for failing to fulfill orders. With respect to orders placed after Vineyard's termination of the franchise, the absence of a franchise is also reasonable cause to deny delivery. Therefore, the validity of the denial of delivery depends on the validity of the termination. As we conclude that the termination was valid, so was Vineyard's refusal to ship to Heidelberg after termination.

## IV

For the foregoing reasons, we AFFIRM the district court's judgment.[4]

---

4. Judge Oberdorfer concurs in deference to the interpretation of Ohio law by the majority of this panel and the district court sitting there.