Judge JAMES S. GWIN, Northern
District of Ohio (concurring and dissenting in part).
I agree with much of Judge Stranch’s reasoning. First, the majority correctly finds that Ohio law allows the issuance of equitable relief in these beverage distributor cases. Second, Judge Stranch is correct that plaintiffs show a strong likelihood of success on their Franchise Act claim that TWG’s desire to streamline its Ohio distribution structure does not amount to just cause for terminating the franchises. Nevertheless, I disagree that the Wine Distributors have shown sufficient evidence of irreparable injury. Because I believe that injunctions should be disfavored, especially where there has been no *485 discovery or development of the evidence, and the district court’s clearly erroneous finding of irreparable harm left it unable properly to balance the four requisite preliminary injunction factors, I would find the district court abused its discretion in issuing a preliminary injunction.
Deploying “one of the most drastic tools in the arsenal of judicial remedies,” Hanson Trust PLC v. SCM Corp., 774 F.2d 47, 60 (2d Cir.1985), the district court determined that the Wine Distributors were likely to suffer irreparable injury from the loss of TWG product lines before the district court could hold a trial on the merits. The district court found irreparable injury likely without saying which products would, if lost, trigger irreparable injury during the pendency of the litigation, without examining whether the distributors could substitute other franchised products, and without any persuasive explanation why money damages could not remedy any improper franchise cancellation.
Under certain conditions, and upon specific evidentiary showings, a movant distributor can prove that a particular product, in a particular market, is so fundamental to her business that the lost product would cause irreparable damage to her customers’ goodwill. Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 19 (1st Cir.1996). Yet here, nothing supports such a finding. The district court should have required the Wine Distributors to show “both certain and immediate, rather than speculative or theoretical” harm. Mich. Coalition of Radioactive Material Users, Inc. v. Griepentrog, 945 F.2d 150, 154 (6th Cir.1991). They did not, and the district court should not have issued the preliminary injunction.
The district court based its finding of irreparable injury on an idle boast in TWG’s termination letter that several of its product lines are “unique.” However, as the term is generally used, it would be difficult to find less “unique” products than the commodity brands commonly associated with TWG, wines whose principal identifying feature is that grocers and wine stores sell them in cardboard boxes with taps to facilitate longtime storage. Though uniqueness, even of TWG’s cardboard-clad brands, might have been credibly asserted with appropriate evidence demonstrating some unique endowment with consumer goodwill, no such showing was made here. No particular brands that might exercise some unique or outsized and incalculable influence in the marketplace were even identified. By excusing the perfunctory, speculative nature of the Wine Distributors’ irreparable injury arguments, the majority minimizes the necessary showing of irreparable injury. Because a district court abuses its discretion when it imposes a pre-trial injunction based on a clearly wrong determination of irreparable harm, I would vacate the preliminary injunction.
I.
Given the Ohio General Assembly’s adoption of special-interest legislation guaranteeing distributors outsized profits at the consumers’ expense, the majority correctly finds that the wine distributors showed a likelihood of success on their claim that TWG ended their franchises without just cause. Still, the mere likelihood of success does not warrant a preliminary injunction. “A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it.” Overstreet v. Lexington-Fayette Urban Cnty. Gov’t, 305 F.3d 566, 573 (6th Cir.2002). In deciding whether to jump into a dispute before any discovery has occurred, a court *486 should grant preliminary injunctive relief only if equitable relief is necessary to stave off irreparable harm “pending final hearing.” Mayo v. Lakeland Highlands Canning Co., 309 U.S. 310, 316, 60 S.Ct. 517, 84 L.Ed. 774 (1940). Courts should first decide whether interim relief is necessary lest ultimate relief would become moot. Under circumstances such as these, particularly where a party has demanded a jury trial, a district court must “act with caution and restraint.” Day v. Video Connection, 602 F.Supp. 100, 103 (N.D.Ohio 1982).
The district court, however, did not exercise caution or restraint. The affidavits supporting the Wine Distributors’ motions for preliminary injunctions were vague and conclusory. Although they bore the burden to prove certain and immediate harm, the Wine Distributors referred only to “certain TWG brands” and provided no evidence that ending the franchise on these particular products might have amounted to irreparable injury. Their affidavits refer to “the TWG brands at issue” and, in nearly identical and equally conclusory language, prophesy “immediate and irreparable injury to [their] business and reputation[s] that cannot be compensated by money damages.” Despite these doomsday pronouncements, the motions and the affidavits left the district court without any facts upon which it could plausibly find anything but a speculative threat of irreparable harm.
Irreparable harm can result from franchise cancellations where a particular product has an outsized impact on a distributor’s business model and the distributor shows that the loss of that product line will erode customer goodwill and cause incalculable injury. Baccarat, 102 F.3d at 19. Still, this does not excuse a movant from its burden to give testable evidence that the particular product exercises that unique influence, id., or that any associated goodwill will be lost in the absence. Tom Doherty Associates, Inc. v. Saban Entertainment, Inc., 60 F.3d 27, 38 (2d Cir.1995) (distinguishing unquantifiable harm from merely speculative harm).
The Wine Distributors could have carried their burden in two ways. First, they could have offered specific evidence that particular TWG products were unique in ways that would affect the sale of other products that the Wine Distributors distributed. After showing that the loss of some franchise would directly affect other sales, the Wine Distributors could have argued that the associated lost sales of other products were unquantifiable and would cause irreparable injury pending trial unless the parties’ franchise relationship was frozen. Alternatively, the Wine Distributors could show irreparable harm by showing that they had imbued the franchised products with the franchisee’s goodwill, and that goodwill would be forfeited to their successor distributor to the Wine Distributors’ irreparable detriment. The Wine Distributors made no such showings.
A.
The majority correctly acknowledges that the loss of a unique product “can cause a drop in customer goodwill.” But “the plaintiffs showing must possess some substance; a preliminary injunction is not warranted by a tenuous or overly speculative forecast of anticipated harm.” Baccarat, 102 F.3d at 19. The district court, however, based its irreparable harm determination on some unproven uniqueness of brands that the distributors never even identified.
Although TWG boasted in its termination letters that several of its high-velocity wines are “unique,” the plaintiff distributors offered no evidence to show which brands were involved or that they are unique in ways that implicate — let alone *487 demonstrably jeopardize — customer goodwill. “The fact that a bottle or type of wine is unique does not mean that the loss of the right to sell that wine causes unmeasurable harm.” Excello Wine Co. v. Monsieur Henri Wines, Ltd., 474 F.Supp. 203, 210 (S.D.Ohio 1979) (expressing skepticism that any franchise termination would impair any relationships with retailers). Nor does the fact that a unique product might enjoy a prominent national reputation establish that the loss of the product would cause irreparable injury. Caral Corp. v. Taylor Wine Co., No. C-1-80-215, 1980 U.S. Dist. LEXIS 17753, at *15 (S.D.Ohio July 15, 1980) (“If that were so, no franchise in any field involving a well known product could ever be terminated without an irreparable damage question and that simply cannot be so.”).
To show irreparable injury, a movant must present evidence that a product is unique in ways that involve customer goodwill and threaten irreparable harm. When compared with the evidence here, the irreparable-injury finding in Baccarat enjoyed overflowing evidentiary support. Still, the First Circuit considered irreparable injury a “close question.” In contrast to this case, the Baccarat franchisee showed evidence that the Baccarat crystal brand was an integral component of the movant’s business model, that customers relied on the availability of the Baccarat brand instead of other comparable products, and that the line served as “a beacon to attract potential customers.” Baccarat, 102 F.3d at 19. Baccarat, in short, carried its burden to show evidence necessary to support the potential loss of consumer goodwill and the threat of irreparable injury-
The Wine Distributors offered no such evidence. First, nothing suggests that any of the TWG products are not fungible within the market for high-velocity wines. For the deprivation of a supposedly “unique” product to threaten irreparable harm, a movant must make some meaningful showing that another comparable product cannot seamlessly replace the jeopardized brand. Baccarat, 102 F.3d at 19 (“Ross-Simons could not simply replace the Baccarat line with some other brand.”); Hill Distrib. Co. v. St. Killian Imp. Co., Inc., No. 2:11-CV-706, 2011 WL 3957255, at *5 (S.D.Ohio Sept. 7, 2011) (“There is not currently a brand available that could fill the void.”). The characterization of unspecified products as unique “does not end our inquiry” because the inability to obtain a particular product “does not of itself show that ‘nothing can answer the justice of the case but the performance of the contract in specie ....’” A.L.K. Corp. v. Columbia Pictures Indus., Inc., 440 F.2d 761, 764 (3d Cir.1971). Trademarked items may be unique, but to the customer may also be wholly fungible with a competitor’s similar item.
Nonetheless, on fungibility, the Wine Distributors say only that within the distribution industry (which they do not further illuminate) “it is very unlikely that [the Wine Distributors] would be able to find a comparable wine product to distribute in place of the TWG brands.” Certainty and imminence this is not; conclusory speculation this very much is. There is simply no evidence to suggest that the “certain TWG wines” to which the Wine Distributors vaguely refer, however trivially unique they may be, cannot be replaced by equally quaffable alternatives.
Moreover, courts must analyze irreparable injury stemming from terminated product lines within particular markets and as to particular products. Baccarat, 102 F.3d at 21. Consumer goodwill is not simply sales volume, but whether consumer goodwill is implicated turns on the role and significance of a particular brand with *488 in a distributor’s portfolio. Compare Dayton Heidelberg v. Vineyard Brands, 108 F.Supp.2d 859 (S.D.Ohio 2000) (loss of specific brands did not cause irreparable injury from lost customer goodwill despite testimony suggested that customers had come to expect the brands’ availability because the wines were an insignificant portion of total sales and other brands could replace those wines), with Esber Bev. Co. v. Labatt USA Op. Co., No. 2009CV03142 (Ohio Ct. Com.Pl. Dec. 1, 2009) (finding irreparable injury threatened by loss of beer supplier’s line that accounted for 90% of a distributor’s products). Where a product is without unusual significance, “it is doubtful that any relationships with retail outlets would be impaired.” Excello, 474 F.Supp. at 210.
The Wine Distributors failed to show that the elusive TWG products play a significant enough role in their portfolio to implicate customer goodwill or threaten irreparable injury. Though the district court found that TWG products were a significant portion of the Wine Distributors’ sales, that finding is clearly incorrect because the evidence only establishes that the TWG products comprise a significant portion of its customers’ total wine sales. It does nothing to illuminate the significance of TWG products within the Wine Distributors’ portfolios for the purposes of customer goodwill; wine may be only a small portion of their customers’ orders.[8] There was insufficient evidence to suggest that particular TWG products play a sufficiently pivotal role in the Wine Distributors’ portfolios, or in their customers’ expectations and purchasing decisions, to threaten irreparable injury.
B.
Another way that the Wine Distributors could have shown irreparable injury from the loss of customer goodwill would have been to show that their promotional efforts added to the products at issue. Customer goodwill reflects the value-addition that a distributor gives the product, and a distributor’s investment in good relations with grocers, convenience stores, off-licenses, and bars could result in greater sales of the franchise products. However, this goodwill is separate and distinct from the goodwill otherwise associated with the product itself. Budweiser will sell huge amounts of beer no matter who distributes it. Likely, distributors have only marginal impact on the product quantities sold. As a result, it is not clear that the terminated distributors will lose any significant goodwill that the district court could not otherwise compensate with a legal remedy.
Nonetheless, the Wine Distributors could have shown a threat to their earned goodwill — as distinct from that inherent in their products — by showing that they sell greater quantities of the products than comparably-situated distributors sell in other areas. If the Wine Distributors had shown that they sell more of the franchised products they could plausibly argue that this relative success would flow to the new franchisee. They could have shown that their efforts resulted in goodwill-enhanced wine sales that the replacement distributor would irreparably capture. *489 For example, if the Wine Distributors had achieved a 5% market share for the franchise products within their territories while similarly situated franchisees had only achieved 2% market share in other regions, the Distributors could suggest that they would lose this goodwill to their replacement franchisee. There is precedent for this type of showing. Vineyard Brands, 108 F.Supp.2d at 864 (defendant winemaker established sub-par performance by its distributors at an evidentiary hearing on motion for a preliminary injunction). But the plaintiff distributors made no such showing here. Instead, the district court inferred that the Wine Distributors’ history of distributing unidentified TWG products, including “several unique, high-velocity wines” engenders consumer goodwill that the termination would irreparably damage. Yet without any evidentiary support, that inference was speculative and inappropriate in any proper determination of irreparable harm. Griepentrog, 945 F.2d at 154.
Ohio’s elected representatives have enacted and regularly reinforced a protectionist distribution statute, guaranteeing healthy profit margins and nearly irrevocable local monopolies to in-state distributors. Against this legislative solicitude for distributors, the district court could find that the Wine Distributors made a substantial showing of a likelihood of success on the merits by showing The Wine Group cancelled them without “just cause.” Esber Bev. Corp. v. Wine Grp., Inc., No. 2011CA00179, 2012 WL 983194 (Ohio Ct.App. March 19, 2012). Nevertheless, in the absence of sufficient evidence that preliminary relief was necessary to stave off irreparable harm, the district court should not have given injunctive relief until the case was fully presented. E.g., InBev USA, LLC v. Hill Dist. Co., No. 2:05-CV-298, ECF Doc. 60, at 2 (S.D.Ohio Sept. 7, 2006) (awarding permanent injunction enjoining a brewer from terminating or altering franchise with distributor following summary judgment for distributor).
II.
By erring in finding irreparable harm, the district court abused its discretion in imposing a preliminary injunction. The four factors are not preconditions, and we deferentially review a district court’s balancing of correctly determined factors for abuse of discretion. Certified Restoration, 511 F.3d at 541. However, an error of law or fact on the individual factors themselves is abuse of discretion. See Charlesbank Equity Fund II v. Blinds To Go, Ltd., 370 F.3d 151, 158 (1st Cir.2004) (“The trial court’s discretion is not unbridled and “[ajbuse occurs when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed, but the court makes a serious mistake in weighing them.”) (quoting Indep. Oil & Chem. Workers of Quincy, Inc. v. Procter & Gamble Mfg. Co., 864 F.2d 927, 929 (1st Cir.1988)).
Regardless how certain that a movant is likely to succeed on the merits, we must weigh that determination against a correct evaluation of the threat of irreparable harm.
The majority reads Mascio for the proposition that this court can affirm a preliminary injunction on the basis the first factor alone, but that is only necessarily true where, as in Mascio, the likelihood of success was the only factor challenged on appeal. I do not read Mascio to end a district court’s obligation to consider the second factor correctly, or to establish that a reviewing court does not properly disturb a district court’s balancing of factors “where the district court relied upon clear *490 ly incorrect findings of fact.” Mascio, 160 F.3d at 313.
III.
Finally and on a largely unargued point, the district court should not have sealed pleadings and exhibits without making constitutionally required findings to justify concealing court documents from the public. The public holds a qualified constitutional right of access to court documents that extends well beyond judicial opinions. The First Amendment access right extends to court dockets, records, pleadings, and exhibits, and establishes a presumption of public access that can only be overcome by specific, on-the-record findings that the public’s interest in access to information is overcome by specific and compelling showings of harm. Press-Enterprise Co. v. Superior Court, 478 U.S. 1, 13-14, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986); see also In re Application of Nat’l Broad. Co., 828 F.2d 340, 345 (6th Cir.1987) (district court made inadequately specific findings that compelling interests favored closure). The right attaches to civil proceedings, Detroit Free Press v. Ashcroft, 303 F.3d 681, 695-96 (6th Cir.2002), and constitutional standards apply not only to courtroom proceedings, but to dockets, pleadings, and documents attached to pleadings. See Hartford Courant Co. v. Pellegrino, 380 F.3d 83, 92 (2d Cir.2004); In re New York Times Co., 828 F.2d 110, 114 (2d Cir.1987).
The sealing and protective orders issued here make none of the required findings. TWG moved to file its brief in opposition under seal, saying only that “[cjertain documents attached as exhibits to and discussed in TWG’s Brief are stamped ‘Confidential’ ” The next day a magistrate judge entered a four-line Order finding simply that “the motion sets forth good cause” and sealing the brief and exhibits. Simultaneously, the parties filed a joint proposed protective order providing that they will file self-designated confidential documents under seal. That proposed order was entered by a magistrate judge three days later, and the Wine Distributors promptly filed their reply, and several exhibits, under seal. The district court accomplished this without any specific findings of harm, without any balancing of the public’s interest against the parties’, and with no evident attempt at narrow tailoring. By way of showing the overbreadth of the sealed documents, it should suffice to note that among them is an Ohio trial court order.
The protective order is unconstitutionally overbroad and abdicates the court’s responsibility to preserve the public’s access right, which it effectively “turn[ed] over to the parties.” Procter & Gamble Co. v. Bankers Trust Co., 78 F.3d 219, 227 (6th Cir.1996) (vacating protective order). Beyond vacating the preliminary injunction, I would vacate the parties’ stipulated protective order and permit the parties to move the district court for appropriate redactions.

. We call the movants in this case "Wine Distributors” for-convenience because the termination notices suggest that certain high velocity wine products are at issue, but we have no evidence to show the proportion of different alcoholic beverages represented in their businesses. For all the Court is aware, "Beer Distributors” may be the more accurate term. In 2010, beer accounted for 50% of beverage industry market share while wine accounted for only 17%. See Distilled Spirits Council, Industry Review Support Tables — 2010, available at http://www.discus.org/pdf/Spirits_Cate gory_Tables_2010.pdf (last visited May 8, 2012).