JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendants-appellants Phillip and Katherine Pavarini appeal from a summary judgment entered in favor of plaintiff-appellee Sailing, Inc. ("Sailing"), on Sailing's complaint that the Pavarinis trespassed on its boat yard by failing to remove a damaged sailboat and that they failed to pay a storage fee for the boat. The court entered an award of $23,332.75 for attorney fees against the Pavarinis as sanctions for their frivolous conduct in defending the action. The Pavarinis' assignments of error challenge the propriety of the summary judgment, the court's handling of discovery and other pretrial matters, the issuance of an injunction, the imposition of sanctions, and the conduct of counsel. We find the court erred by granting summary judgment because there are genuine issues of material fact as to whether Sailing effectively terminated its consent for the boat to be on its property. We likewise conclude that the court abused its discretion by awarding attorney fees for matters that were unrelated to frivolous conduct. We reverse and remand.
 I {¶ 2} Before reaching the merits of this appeal,[1] we must first consider a motion to dismiss the appeal on grounds that the Pavarinis, as vexatious litigators, failed to obtain leave from this court before filing their notice of appeal. *Page 4 
 {¶ 3} In 1999, the Pavarinis were classified as "vexatious litigators," apparently under R.C. 2323.52(A)(2)(c) which defines "vexatious conduct" as conduct imposed solely for delay.[2] SeePavarini v. Manning (July 29, 1999), Cuyahoga C.P. No. 377857. As vexatious litigators, the trial court prohibited them "from instituting and/or maintaining legal proceedings in a pro se capacity in a court of common pleas, municipal court, or county court without first obtaining the leave of court to proceed."[3] The Pavarinis did not first seek leave to file an appeal with this court, and Sailing argues that the failure to do so renders the notice of appeal a nullity.
 {¶ 4} An attorney filed the notice of appeal and currently represents the Pavarinis in this appeal, so they are not "pro se" and not in violation of the court's order prohibiting them from "instituting and/or maintaining legal proceedings in a pro se capacity." In any event, the order classifying the Pavarinis as vexatious litigators did not restrict their ability to institute or maintain legal proceedings in a pro se *Page 5 
capacity in a court of appeals. The order specifically referenced the "court of common pleas, municipal court, or county court." The court of appeals is a state court; hence, the Pavarinis did not violate any of the express terms of the vexatious litigator classification by filing this appeal.
 {¶ 5} Sailing erroneously maintains that the court could not purport to classify the Pavarinis as vexatious litigators, yet still permit them to institute and/or maintain legal proceedings when represented by counsel. R.C. 2323.52 places no express restriction on the court's ability to qualify a vexatious litigator classification to pro se filings only. We note that in Roo v. Sain, Franklin App. No. 04AP-881,2005-Ohio-2436, the Franklin County Court of Appeals affirmed a vexatious litigator classification that limited the R.C. 2323.52(D) restrictions to "pro se actions by appellant against appellee." Id. at ¶ 4. Admittedly, the pro se restriction was not addressed by the court of appeals; nevertheless, its passing without mention by the court of appeals suggests that the court found nothing improper about the restriction.
 {¶ 6} A restriction on pro se filings by vexatious litigators is consistent with law predating R.C. 2323.52. Prior to the adoption of the statute, the courts were understood to have inherent powers to limit a particular litigant's access to the courts or to prevent additional filings in a particular case. See Smith v. Ohio Dept of Human Serv.
(1996), 115 Ohio App.3d 755, 759. This understanding carried forward after the adoption of R.C. 2323.52. For example, in Mayer v.Bristow (1999), 91 Ohio St.3d 3, 14, the supreme court recognized that "principles of reasonableness, *Page 6 
rationality, and access to courts apply interdependently to frame a single constitutional inquiry, which is whether the challenged procedure is properly tailored to prevent further abuse of court processes without unduly burdening the submission of legitimate claims." The supreme court's use of the phrase "properly tailored" necessarily implies that courts have discretion to fashion orders as the circumstances dictate.
 {¶ 7} Sailing argues, however, that the court's vexatious litigator classification does not limit only the Pavarinis pro se filings. It cites to the final paragraph of the 1999 vexatious litigator order, which omits the "pro se" language of the earlier paragraph:
 {¶ 8} "Further, Katherine Krinek Pavarini and Phillip E. Pavarini are subject [sic] the restrictions of O.R.C. 2323.52(I), such that whenever it appears by suggestion of the parties or otherwise that either Katherine Pavarini or Phillip E. Pavarini have instituted, continued, or made an application in legal proceedings without obtaining leave to proceed from this Court pursuant to O.R.C. 2323.52(F), the court in which the legal proceedings are pending shall dismiss the proceedings or application of the vexatious litigator."
 {¶ 9} We do not consider the absence of "pro se" language from this part of the court's order to be dispositive of the court's intent when making the classification. The last paragraph of the court's order simply mirrored the language *Page 7 
from the version of R.C. 2323.52(I) in effect in 1999.[4] As noted, there is no language in either the version of the statute in effect in 1999 or the current version of the statute that mentions "pro se" litigants in the sense used by the court.[5]
 {¶ 10} In any event, other language in the court's order confirms its intent to limit the vexatious litigator classification to the Pavarinis acting pro se. The court not only mentioned the Pavarinis' conduct in the underlying case, but in "other matters where [the Pavarinis] have acted in a pro se capacity * * *." (Emphasis sic.) The court's use of the term "pro se" is undoubtedly significant, and its absence from the final paragraph of the order is of no moment.
 {¶ 11} We conclude that the court could properly restrict the Pavarinis pro se filings in its order classifying them as vexatious litigators. As the Pavarinis were represented by counsel when filing their notice of appeal, they were not required to first seek leave of court. The motion to dismiss the appeal is denied. Our *Page 8 
conclusion here necessarily moots Sailing's remaining arguments in favor of dismissal. Consistent with our decision to deny the motion to dismiss the appeal, we likewise deny Sailing's motion for attorney fees.
 II {¶ 12} The Pavarinis' first assignment of error is that the court erred by granting summary judgment because genuine issues of material fact exist as to the claim of trespass and the counterclaim for damages.
 A {¶ 13} Summary judgment may issue when, construing the evidence most strongly in favor of the non-moving party, there is no genuine issue of material fact and reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. See Civ.R. 56(C).
 {¶ 14} `"A common-law tort in trespass upon real property occurs when a person, without authority or privilege, physically invades or unlawfully enters the private premises of another whereby damages directly ensue * * *.'" Apel v. Katz, 83 Ohio St.3d 11, 20, 1998-Ohio-420, quoting Linley v. DeMoss (1992), 83 Ohio App.3d 594, 598. The Restatement of Law 2d, Torts (1965), Section 160, states the law that applies when an initial permission to be present on land has been revoked:
 {¶ 15} "A trespass may be committed by the continued presence on the land of a structure, chattel, or other thing which the actor or his predecessor in legal interest *Page 9 
has placed on the land (a) with the consent of the person then in possession of the land, if the actor fails to remove it after the consent has been effectively terminated * * *." See, also, Garrard v.McComas (1982), 5 Ohio App.3d 179, 181.
 B {¶ 16} Sailing's complaint alleged that the Pavarinis brought a damaged sailboat to Sailing and asked for a repair estimate, but failed to respond to the estimate and left the boat in Sailing's possession without paying the required storage fee. It filed claims for trespass and nuisance relating to the failure to remove the boat from the premises, as well as breach of contract for the failure to pay the repair estimate and storage in the Sailing boat yard. In addition, it requested a preliminary injunction for the immediate removal of the boat. The court granted the preliminary injunction, making a finding of fact that Sailing had "requested Defendants to enter into a storage contract or remove the vessel numerous times, the boat was not removed by Defendants and remains upon Plaintiff's premises without its permission." The Pavarinis then removed the boat from the Sailing boat yard. The court granted summary judgment to Sailing on all causes of action, ordering the Pavarinis to pay damages totaling $8,425.80. The court also awarded exemplary (punitive) damages for trespass in the amount of $1. In a written opinion, the court awarded Sailing attorney fees in the amount of $23,335.75. The court cited two grounds for attorney fees: (1) the Pavarinis'"inclusion * * * of meritless and irrelevant counterclaims and defenses, their consistent but baseless excoriation of *Page 10 
Plaintiff's counsel * * * and their constant attempts to delay this matter" and (2) as part of the punitive damages award.
 C {¶ 17} We find that the court erred by granting summary judgment to Sailing because a genuine issue of material facts exists as to whether Sailing effectively terminated its consent to keep the boat on the premises.
 {¶ 18} Sailing's general manager submitted an affidavit in which he stated that the Pavarinis brought their damaged boat to Sailing in mid-November 2003. The Pavarinis requested that the boat be lifted from the water and that Sailing prepare an estimate for repairing the boat. Sailing faxed a repair estimate[6] on November 26, 2003. The cover page to the fax told the Pavarinis that "if the boat is removed within the week no storage fees will be charged, if not let us know what you want." The Pavarinis did not respond to Sailing.
 {¶ 19} In March 2004, Sailing's general manager sent the Pavarinis a fax which contained a storage agreement and rate card. The cover page of the fax *Page 11 
stated, in its entirety: "Mr. Pavarini, storage is past due. Please fill out and return with full payment. Thank you. Due $583.30[.]" (Emphasis sic.)
 {¶ 20} An affidavit by Sailing's general manager stated:
 {¶ 21} "In November 2003, after the Pavarinis' boat was brought to Sailing Inc.s [sic] yard, it was explained that the repairs should be contracted or the boat should be removed. In March, 2004 it was explained that either a storage contract was necessary or the boat should be removed. No repairs were contracted, no storage contract entered into, and the boat was not removed until June 16, 2005." Citing to an appended rate sheet for storage, the general manager calculated total storage fees of $8,280 and a fee of $145.80 for a repair estimate and a boat "lift."
 {¶ 22} These evidentiary materials,[7] viewed in a light most favorable to the Pavarinis, would not allow reasonable minds to come to but one conclusion on the issue of whether Sailing effectively terminated its consent for the Pavarinis to keep their boat at the Sailing boat yard. Sailing's "pay up or move out" position could be viewed not as an effective termination of Sailing's permission for the boat to remain *Page 12 
on Sailing's property, but as a warning that if the boat remained, a contract for storage would arise. The facts show that Sailing continued to charge storage fees in conformance with the rate card that it faxed to the Pavarinis in March 2004 when the boat was not removed. Importantly, Sailing did not offer any evidence that it communicated with the Pavarinis after March 2004, so reasonable minds could differ on whether this silence constituted a tacit recognition that a contract for storage had arisen. Sailing's failure to offer any evidence that it made an unconditional demand for the removal of the boat after March 2004 could lead reasonable minds to differ on whether Sailing expressly terminated its permission for the boat to remain at the boat yard, thus creating an implied contract for storage.
 D {¶ 23} In a filing captioned "Additional Argument"[8] to its motion for summary judgment, Sailing cited to the court's findings of fact and conclusions of law issued in conjunction with the preliminary injunction. In conclusion of law number one, the court stated that "[t]he continued presence of Defendants' boat upon Plaintiff's premises is a willful and wanton continuing trespass and a nuisance." The Pavarinis *Page 13 
did not appeal from the preliminary injunction, so Sailing argues that both the trespass and the Pavarinis' willful and wanton conduct have been conclusively established as a fact by principles of res judicata.
 {¶ 24} In Grava v. Parkman Twp., 73 Ohio St.3d 379, 1995-Ohio-331, the syllabus states, "[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." "Final" orders are defined by R.C. 2505.02. R.C. 2505.02(A)(3) classifies a preliminary injunction as a "provisional remedy." Although ordinarily not final orders, provisional remedies may become final orders if:
 {¶ 25} "(a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy [and]
 {¶ 26} "(b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action." R.C.2505.02(B)(4).
 {¶ 27} We conclude that the preliminary injunction was not final for purposes of R.C. 2505.02. Although the preliminary injunction determined the action with respect to subpart (a) of R.C. 2505.02(B)(4), the Pavarinis had the ability to appeal that *Page 14 
ruling following a final judgment as to all issues and claims in the case.[9] Consequently, the preliminary injunction did not satisfy subpart (b) of R.C. 2505.02(B)(4). If the preliminary injunction was non-final, it could not be res judicata on the issue of either trespass or malice. The first assignment of error is sustained.
 III {¶ 28} The Pavarinis next complain that the court abused its discretion by awarding attorney fees as a sanction for frivolous conduct. They maintain that they were not in violation of any court order relating to discovery violations so there was no basis for awarding attorney fees.
 {¶ 29} The court's order granting attorney fees articulated two different grounds for the award: (1) as sanctions for frivolous conduct and (2) as part of the punitive damages award. By reversing the summary judgment, any basis for an award of attorney fees stemming from punitive damages is vitiated. We therefore review the court's order to determine whether it abused its discretion by awarding attorney fees as a sanction for frivolous conduct.
 {¶ 30} The total amount of fees awarded by the court was an abuse of discretion because the fee award encompassed counsel's fees for the entire case, irrespective of whether those fees were occasioned by frivolous conduct. For *Page 15 
example, the court awarded counsel fees for initial research that he performed before filing the complaint, before any "litigation" existed. In fact, the court's award of attorney fees very closely tracked the fee statement counsel submitted. That statement listed fees of $23,668.50 — a figure which reflected a total of nearly 200 hours worked on the entire case. The court granted attorney fees in the amount of $23,332.75,[10] an amount commensurate with counsel's stated number of hours expended on the case, so its award necessarily encompassed fees for the entire case, not just for time spent defending frivolous conduct. This amount of fees stands in clear contravention of the court's own statement of facts which detailed the Pavarinis' frivolous conduct as failing to appear for a deposition, seeking continuances, denying requests for admissions without first making a reasonable inquiry. The court inexplicably failed to separate out those fees that were not related to the frivolous conduct.
 {¶ 31} Ohio follows the "American rule" which holds that attorney fees for the prevailing party are not recoverable absent statutory authorization. See Sohn v. Bd. of Edn. (1976), 46 Ohio St.2d 177, 183. The court's decision to award attorney fees based on all of counsel's time expended on the case was tantamount to giving the prevailing party its attorney fees. This decision was arbitrary, unreasonable and *Page 16 
unconscionable; hence, it was an abuse of discretion. See Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. We therefore sustain the sixth assignment of error.
 {¶ 32} This cause is reversed and remanded for proceedings consistent with this opinion.
It is, therefore, ordered that said appellants recover of said appellee their costs herein taxed.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
FRANK D. CELEBREZZE, JR., A.J., and CHRISTINE T. McMONAGLE, J., CONCUR
[1] Appellant assigns seven errors for our review. Finding assignments one and six dispositive, the remaining assignments of error are moot. See App.R. 12(A)(1)(c).
[2] In its opinion in that case, the court noted that in the pending litigation the Pavarinis had failed to attend a default hearing despite receiving notice; failed to answer a counterclaim; failed to respond to discovery notices; and failed to attend properly noticed depositions.
[3] R.C. 2323.52(D)(1)(c) states, "[i]f the person alleged to be a vexatious litigator is found to be a vexatious litigator, subject to division (D)(2) of this section, the court of common pleas may enter an order prohibiting the vexatious litigator from doing one or more of the following without first obtaining the leave of that court to proceed * * * (c) Making any application, other than an application for leave to proceed under division (F) of this section, in any legal proceedings instituted by the vexatious litigator or another person in the court of claims or in a court of common pleas, municipal court, or county court."
[4] The version of R.C. 2323.52(I) in effect in 1999 stated, "Whenever it appears by suggestion of the parties or otherwise that a person found to be a vexatious litigator under this section has instituted, continued, or made an application in legal proceedings without obtaining leave to proceed from the appropriate court of common pleas to do so under division (F) of this section, the court in which the legal proceedings are pending shall dismiss the proceedings or application of the vexatious litigator."
The current version of R.C. 2323.55(I) adds the words "or court of appeals" following the words "appropriate court of common pleas." It is identical in all other respects.
[5] In either version of R.C. 2323.52, the word "pro se" appears only in the context of licensed attorneys who have been classified as vexatious litigators. The classification only applies when the attorney acts in a pro se capacity; not when actively representing clients.
[6] The Pavarinis argue that Sailing did not meet its initial burden under Civ.R. 56(C) because Sailing did not properly authenticate the exhibits it attached to the motion for summary judgment, and without that material it produced no evidence in support of the motion. Even if we assume without deciding that these materials were improperly offered in support of the motion for summary judgment, the Pavarinis did not object to them. Absent an objection, the court did not abuse its discretion by considering these documents. See Brown v. Ohio Cas. Ins.Co. (1978), 63 Ohio App.3d 87, 90-91; Alliant Food Servs., Inc. v.Powers, Cuyahoga App. No. 82189, 2003-Ohio-4193, at ¶ 16.
[7] In their brief in opposition to the motion for summary judgment, the Pavarinis argued that they did not receive the estimate and assumed that their boat would be stored at a seasonal rate of $500. They did not, however, offer any evidentiary material to support this assertion, nor did they submit an affidavit to substantiate their claim. Civ.R. 56(E) states that "* * * an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." We therefore consider only whether Sailing met its initial burden of demonstrating no genuine issue of material fact. See Vahila v. Hall
(1997), 77 Ohio St.3d 421, 428-429, 1997-Ohio-259.
[8] After submitting its motion for summary judgment, Sailing filed an "addendum" to that motion. It also filed a reply brief without leave of court as required by Loc.R. 11(D) of the Cuyahoga County Court of Common Pleas. The "Additional Argument" filing followed the reply brief and was likewise filed without leave of court. The Pavarinis objected to Sailing's submission of "additional argument" but the court did not rule on it. We must presume that the court overruled it. State ex rel. The VCos. v. Marshall, 81 Ohio St.3d 467, 469, 1998-Ohio-329.
[9] The court's use of Civ.R. 54(B) language is of no consequence, as certification language will not convert a non-final order into a final order. See Chef Italiano Corp. v. Kent State Univ. (1989),44 Ohio St.3d 86; Deyerle v. City of Perrysburg, Wood App. No. WD-03-063,2004-Ohio-4273, at]}16.
[10] The court's attorney fee order made three revisions to the fee request. Those revisions reduced counsel's time expended on the case by 1.75 hours. *Page 1