[Cite as *Shelly Co. v. Karas Properties, Inc.*, 2012-Ohio-5416.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 98039

---

## SHELLY CO.

**PLAINTIFF-APPELLEE/**
**CROSS-APPELLANT**

vs.

## KARAS PROPERTIES, INC.

**DEFENDANT-APPELLANT/**
**CROSS-APPELLEE**

---

### JUDGMENT:
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-739744

**BEFORE:** Cooney, J., Stewart, P.J., and Keough, J.

**RELEASED AND JOURNALIZED:** November 21, 2012

**ATTORNEYS FOR APPELLANT/CROSS-APPELLEE**

Steven J. Miller
David A. Kunselman
Miller Goler Faeges LLP
1301 East Ninth Street
Suite 2700
Cleveland, OH 44114-1835

Andrew T. Czarzasty
Joseph B. Jerome
Joseph B. Jerome & Associates
55 Public Square
Suite 1950
Cleveland, OH 44113


**ATTORNEYS FOR APPELLEE/CROSS-APPELLANT**

Andrew J. Natale
Mark L. Rodio
Frantz Ward LLP
2500 Key Center
127 Public Square
Cleveland, OH 44114

COLLEEN CONWAY COONEY, J.:

{¶1} Defendant-appellant, Karas Properties, Inc. ("Karas"), appeals the partial grant of summary judgment in favor of plaintiff-appellee, the Shelly Co. ("Shelly"), and the damages awarded to Shelly following a bench trial. Shelly cross-appeals the denial of its claim for attorney fees. We find no merit to the appeal and cross-appeal and affirm.

{¶2} This action involves claims and counterclaims between Shelly, the tenant, and Karas, the landlord, under a commercial lease. The parties dispute who is responsible for the cost of rectifying an environmental violation on the property.

{¶3} The leased property consists of 7.1 acres located at 4900 West 150th Street in Cleveland ("the property"). A stream runs across the middle of the property through two 98" by 62" underground culverts. Karas' predecessor-in-interest, Karas Brothers Co., Inc., installed the culverts without a building permit in 1993. At that time, Karas leased the property to another Karas entity — Karas Trucking Co., Inc. The installation of the culverts allowed Karas Trucking to have access to, and use of, more of the land.

{¶4} Shelly's predecessor-in-interest, Cuyahoga Road Products, Inc. ("CRP"), leased the property from Karas Brothers Co., Inc. Although the lease was not signed until March 21, 1995, CRP took possession of the property on March 1, 1994. Paragraph Z of the lease contains the following provision:

Z. ENVIRONMENTAL ACKNOWLEDGMENT

Lessor acknowledges that it is, and will remain solely responsible for any past or future environmental violations arising or resulting solely and

exclusively from Lessor's prior use or occupancy of the leased premises. Lessor shall hold Lessee harmless from any and all fines, costs of cleanup or any costs incidental to or a consequence of any environmental violations arising out of Lessor's or any or all of its predecessor's prior use or ownership of the premises, without limitation.

{¶5} A rain event flooded the area in 2007. As a result, the city of Cleveland ("the City") became aware not only of the existence of the culverts, but also that the culverts were inadequate to handle the flow of water from a large storm. In December 2008, the City cited both Karas and Shelly for violating Cleveland Codified Ordinances 3167.05, which prohibits encroachment in a floodway unless "technical evaluation demonstrates that the encroachment shall not result in any increase in flood levels during the occurrence of a base flood discharge." Section 3167.05(b)(7)(A). Violations are punished based on each day they persist, and Shelly was threatened with fines up to $365,000 per year as a party to a lease that did not expire until 2014.

{¶6} Shelly retained Krock Esser Engineering, Inc. ("Krock Esser") and other experts to prepare plans to eliminate the impediment in the floodway. The experts proposed installing a bypass box culvert above the ordinary high water mark because this design would avoid the need for additional environmental permits required by the EPA, Army Corps of Engineers, and other agencies for any construction below the high water mark.

{¶7} On October 21, 2010, the City issued 254 criminal violations against Karas and Shelly in addition to violations against individual officers of each entity. The City alleged that the two underground culverts installed in the Big Creek Tributary, which

divides the frontage of the property on West 150th Street from acreage in the rear of the property, violated the City's ordinances because they were installed without the required permits and they impeded the floodway. During settlement negotiations, Shelly presented Krock Esser's plan for the bypass box culvert to the City, and the plan became part of separate but similar proposed settlements. Both Shelly and Karas agreed to pay the City $10,650 in fines and promised to remedy the problem in exchange for dismissals of the criminal complaints.

{¶8} In response to the criminal charges, on October 22, 2010, Shelly filed this action seeking indemnity from Karas under the indemnity provision contained in paragraph Z of the lease agreement. Shelly also asserted claims for breach of lease, unjust enrichment, and declaratory judgment. Karas denied it was obligated to indemnify Shelly and filed counterclaims asserting that Shelly was responsible for rectifying the environmental violation caused by the culverts.

{¶9} The trial court granted summary judgment in favor of Shelly and against Karas on liability. It held that the "lease requires Karas to indemnify Shelly for all fines, costs of cleanup, and any other costs incidental to, or a consequence of, the illegal culverts on the leased premises." It further found that Shelly's claim for common law indemnity was moot, because Shelly was entitled to contractual indemnity, and that Shelly's claims for breach of lease, unjust enrichment, and negligence would remain pending because their resolution depended on the evidence presented at trial.

{¶10} At trial, Steve Karas admitted that his brother constructed the culverts in 1993. Steve Karas also admitted that there was no notice of a violation concerning the culverts until December 2008. Although Shelly informed Karas of the proposed bypass box culvert plan prepared by Krock Esser, Karas never sought to have Krock Esser or another engineer estimate the practicability and cost of other solutions. Steve Karas nevertheless asserted without the support of any expert testimony that the environmental violations could be rectified at a lower cost by either removing the culverts and returning the streambed to its natural state, or by creating a swale in the area of the current culvert.

{¶11} Jason Popiel, an engineer with Krock Esser, testified that installation of the bypass box culvert would be the most cost-effective means of solving the problem. He also stated that removing the culverts would cost more than installing the bypass box culvert. Similarly, Eric Flickinger, a wetlands consultant with Flickinger Wetland Services Group, testified that a bypass box culvert was the most expeditious means of fixing the problem because alternative solutions, including removing the culverts, would require numerous permits from multiple agencies, which would increase both time and expense. (Tr. 80-82.)

{¶12} Following a bench trial, the court awarded Shelly $647,679.17 in compensatory damages for breach of contract, plus interest and costs. The court also awarded Shelly attorney fees in the amount of $14,753, which represented the fees incurred in defending the criminal charges, but denied Shelly's claim for attorney fees

incurred in prosecuting its breach of contract claims.   Karas now appeals, raising three assignments of error.   Shelly cross-appeals, raising one assignment of error.

<u>Summary Judgment</u>

{¶13} In its first assignment of error, Karas argues that the trial court erred in granting summary judgment in favor of Shelly and declaring that the parties' lease requires Karas to indemnify Shelly for all fines, cleanup costs, and other costs incidental to, or a consequence of, the illegal culverts on the property.

{¶14} Civ.R. 56(C) provides that summary judgment is appropriate when there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and after construing the evidence most favorably for the party against whom the motion is made, reasonable minds can reach only a conclusion that is adverse to the nonmoving party.   *Zivich v. Mentor Soccer Club Inc.*, 82 Ohio St.3d 367, 369-370, 1998-Ohio-389, 696 N.E.2d 201; *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977).   We review the trial court's judgment de novo using the same standard that the trial court applies under Civ.R. 56(C).   *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 1996-Ohio-336, 671 N.E.2d 241.

{¶15} Karas contends the indemnification provision does not define necessary terms, is ambiguous about whether the parties intended criminal "building code" allegations to be covered, and is ambiguous "on whether there was a 'violation.'"   Karas also claims the indemnification provision is ambiguous about whether it covers Shelly's own negligent conduct.

{¶16} When construing and interpreting lease provisions, courts have applied traditional contract principles and have enforced a lease as written if its language is clear and unambiguous. *Myers v. E. Ohio Gas Co.*, 51 Ohio St.2d 121, 125, 364 N.E.2d 1369 (1977). It is a fundamental principle in contract construction that contracts should "be interpreted so as to carry out the intent of the parties, as that intent is evidenced by the contractual language." *Skivolocki v. E. Ohio Gas Co.*, 38 Ohio St.2d 244, 313 N.E.2d 374 (1974), paragraph one of the syllabus. A reviewing court should give the contract's language its plain and ordinary meaning unless some other meaning is evidenced within the document. *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978). If the terms of the contract are determined to be clear and unambiguous, the interpretation of the language is a question of law we review de novo. *State ex rel. Parsons v. Fleming*, 68 Ohio St.3d 509, 1994-Ohio-172, 628 N.E.2d 1377.

{¶17} Paragraph Z of the lease, which contains the indemnity provision, states:

> Lessor acknowledges that it is, and will remain solely responsible for any past or future environmental violations arising or resulting solely and exclusively from Lessor's prior use or occupancy of the leased premises. Lessor shall hold Lessee harmless from any and all fines, costs of cleanup or any costs incidental to or a consequence of any environmental violations arising out of Lessor's or any or all of its predecessor's prior use or ownership of the premises, without limitation.

{¶18} Section 404 of the Clean Water Act prohibits fill (including culverts) being placed in navigable waters such as the Big Creek Tributary without obtaining a permit from the Army Corps of Engineers. 33 U.S.C. 1344(c)-(e). The Army Corps will only

issue a permit if it finds that the fill "will cause only minimal adverse environmental effects." 33 U.S.C. 1344(e)(1).

{¶19} The City must enforce Cleveland Codified Ordinances 3167.01 et seq, titled Flood Plain Management, to maintain its eligibility for Federal Emergency Management Agency ("FEMA") insurance. Sections 3167.03(c) and 3167.04(a) require that a development permit be obtained before any structure is located within a flood plain. Section 3167.05(b)(7)(A) prohibits encroachment in a floodway, such as the Big Creek Tributary, unless "technical evaluation demonstrates that the encroachments shall not result in any increase in flood levels during the occurrence of the base flood discharge."

{¶20} Criminal building code violations are criminal charges. Therefore, they are included in the plain language of the indemnity provision, which holds Karas "solely responsible for any past or future environmental violations arising or resulting * * * from [Karas'] prior use or occupancy of the leased premises." If Karas intended to exclude certain kinds of criminal charges, such as criminal building code violations, it could have easily included language to that effect when drafting the lease. Thus, the culverts were an environmental violation under the law and under paragraph Z of the parties' lease.

{¶21} It is undisputed that the culverts on the Karas property were installed within the bounds of the Big Creek Tributary without the required permits. The culverts impede the floodway in violation of Cleveland Codified Ordinances 3167.05(b)(7)(A). Indeed, the City filed criminal charges against Karas and Shelly because the culverts impeded the floodway, were installed without permits, and caused a flood during a heavy rain in 2007.

The installation of these culverts without permits constituted criminal acts that were committed before Shelly became a tenant on the property or a party to the lease.

{¶22} Karas argues that Shelly was obligated to pay the costs to repair the environmental violations pursuant to paragraphs F and G of the lease, which state:

### F. OBEDIENCE TO LAW AND REGULATIONS

Lessee will abide by all applicable federal, state and local laws and regulations respecting the premises and their occupancy and use will not use the premises or allow same to be used for any unlawful purpose. Lessee acknowledges responsibility for the procurement of any and all operating permits.

### G. INSPECTION OF PREMISES BY LESSEE: NO WARRANTY OF FITNESS

Lessee acknowledges that it has inspected the premises completely and further acknowledges that Lessor has made no representations, whether written or verbal, regarding same and there is no express or implied warranty by Lessor with respect to the fitness of the premises for any particular use or purpose.

{¶23} However, there is no evidence that Shelly was negligent, committed any criminal acts, or failed to abide by all applicable laws as required by paragraph F. Nor does paragraph G relieve Karas of its responsibilities under paragraph Z. Steve Karas admitted that his brother installed the culverts on the property without any permits before Shelly became a tenant. Other evidence presented at trial also indicated that CRP and Shelly did not install the preexisting culverts. Karas admitted that Karas Trucking was the tenant in possession of the property in 1993, when the culverts were installed. Therefore, the plain language of the lease requires Karas to indemnify Shelly for the environmental violations.

**{¶24}** Finally, Karas argues there was no evidence to satisfy the requirements for indemnification of a settled matter set forth in *Globe Indemn. Co. v. Schmitt*, 142 Ohio St. 595, 53 N.E.2d 790 (1944). However, *Globe* involved an insurance company's right to subrogation after adjusting claims brought against its insured and its insured's codefendant, who was jointly liable to an injured third party. Karas is not an indemnity company, and Shelly is not seeking indemnification for subrogated claims in this case. The trial court found that Karas breached the contractual indemnity provision and awarded damages for breach of contract — not common law indemnity. Indeed, the trial court specifically stated in its journal entry granting partial summary judgment:

> On count five Shelly seeks common law indemnity "in the alternative to contractual indemnity under the Lease *(sic)*." This claim is moot because the plaintiff is entitled to contractual indemnity.

Therefore, *Globe* and its progeny relating to common law indemnity claims are inapplicable here.

**{¶25}** Karas' failure to indemnify Shelly constitutes a breach of the lease agreement. To establish breach of contract, the plaintiff must demonstrate: (1) the existence of a contract; (2) plaintiff's performance; (3) defendant's breach; and (4) plaintiff's damage or loss. *On Line Logistics, Inc. v. Amerisource Corp.,* 8th Dist. No. 82056, 2003-Ohio-5381, ¶ 39, citing *Doner v. Snapp,* 98 Ohio App.3d 597, 600, 649 N.E.2d 42 (2d Dist.1994). Karas' refusal to pay all costs required to cure the preexisting environmental violation constituted a breach of the lease. Therefore, the trial court properly granted summary judgment in favor of Shelly and declared that the parties' lease

requires Karas to indemnify Shelly for all fines, cleanup costs, and other costs incidental to, or a consequence of, the illegal culverts on the leased property.[1]

{¶26} The first assignment of error is overruled.

Damages

{¶27} In its second assignment of error, Karas argues the trial court erred in awarding damages to Shelly. Karas claims the trial court's damage award exceeded the amount of damages Shelly actually incurred. In its third assignment of error, Karas argues the trial should have granted its motion for directed verdict (styled as a motion to dismiss) because Shelly failed to support its damage claims with admissible expert evidence. These assigned errors are discussed together because they are interrelated.

{¶28} A party claiming breach of contract has the duty to prove its damages by a preponderance of the evidence. *Hawkins v. Green*, 8th Dist. No. 96205, 2011-Ohio-5175, ¶ 11. Once the plaintiff has made its case, the trial court has discretion to award damages, and this court will not reverse its decision absent an abuse of discretion. *Roberts v. United States Fid. & Guar. Co.*, 75 Ohio St.3d 630, 634, 1996-Ohio-101, 665 N.E.2d 664.

{¶29} The bulk of Shelly's damages were incurred in correcting the environmental violations on the property. We previously established when addressing the first assignment of error, that Karas breached the lease by failing to indemnify Shelly for the

---

[1] Because Karas' counterclaims for breach of contract, indemnification, and declaratory judgment mirrored Shelly's claims, the reasons supporting summary judgment in Shelly's favor likewise justified denial of summary judgment to Karas on its counterclaims.

environmental violations as required under paragraph Z of the lease. "Money damages awarded in a breach of contract action are designed to place the aggrieved party in the same position it would have been in had the contract not been violated." *Schulke Radio Prods. Ltd. v. Midwestern Broadcasting Co.*, 6 Ohio St.3d 436, 439, 453 N.E.2d 683 (1983). Had Karas not created the environmental violations and allowed them to persist, Shelly would not have incurred the expense of obtaining permits and hiring engineers and excavators to fix them.

{¶30} Shelly's damages included $1,637.50 for a survey of the property in January 2009 after the initial notice of violation. Krock Esser charged $36,953.67 to study alternative solutions to the problem and to design the bypass box culvert. Flickinger Wetland Services Group charged $6,750 for consultation services rendered to ensure the proposed plans did not trigger the need for expensive and time-consuming permits from the EPA and the Army Corps of Engineers. Karas does not challenge the competence of these experts or their testimony. Norfolk Southern charged $2,100 for an easement because part of the bypass box culvert will extend onto the neighboring railroad property. As previously stated, Shelly also paid the City $10,650 in fines to settle the criminal complaint.

{¶31} Karas claims that Nick DiGioia ("DiGioia") of DiGioia-Suburban Excavating, who submitted the lowest and best bid to complete the remedial work, was not competent to testify as an expert on the cost of installing the bypass box culvert.

Karas further argues that because DiGioia's testimony was inadmissible, the court should have granted its motion for directed verdict.

**{¶32}** DiGioia is the president of DiGioia-Suburban Excavating and has been in the business for 37 years. He personally reviewed the bid in his company's ordinary course of business. He testified that his company could perform the work indicated on the plans for $589,588, which was the price of the bid at that time. Because over a year had passed since the bid was submitted and the price of labor and materials has increased, DiGioia testified that the project would have to be rebid. Karas suggests DiGioia's testimony is incompetent in part because the project would require a new bid and the damages are actually greater than his original bid. Shelly nevertheless produced evidence of damages based on the original bid from December 2010 even though new bids would have increased the damages. If anything, DiGioia's testimony kept the damages lower than they otherwise might have been. Further, as president with 37 years experience in the business, DiGioia's opinion on the cost was properly admitted into evidence.

**{¶33}** Although Steven Alex, president of Shelly, testified that Shelly's damages totaled $649,327.81, the court awarded $647,679.17, which represents the total of all the costs listed above exclusive of attorney fees. None of these damages can be considered speculative because the experts who charged these fees testified about the work they performed to fix the environmental problems and Karas offered no expert evidence to

refute the costs. The weight of the evidence presented at trial supports the trial court's damage award of $647,679.17.

**{¶34}** In addition to the cost of fixing the environmental violations, the trial court awarded Shelly $14,753 for the attorney fees it incurred in defending the criminal charges. Shelly never would have had to defend against the criminal charges if Karas had corrected the violations. Therefore, the attorney fees incurred in defending the criminal charges are consequential damages flowing directly from Karas' environmental violations, which are compensable under paragraph Z of the lease.

**{¶35}** Finally, Karas argues that Shelly failed to mitigate its damages. An injured party has a duty to mitigate and may not recover for damages that could reasonably have been avoided. *Chicago Title Ins. Co. v. Huntington Natl. Bank,* 87 Ohio St.3d 270, 276, 1999-Ohio-62, 719 N.E.2d 955, citing *S & D Mechanical Contrs. Inc. v. Enting Water Conditioning Sys. Inc.*, 71 Ohio App.3d 228, 593 N.E.2d 354 (2d Dist.1991). The defendant cannot be held responsible for those damages that a plaintiff could have avoided with reasonable effort and without undue risk or expense. *Kanistros v. Holeman*, 2d Dist. No. 20528, 2005-Ohio-660, ¶ 36, citing *AB & B, Inc. v. Banfi Prods., Inc.*, 71 Ohio App.3d 650, 594 N.E.2d 1151 (11th Dist.1991). *See also Oakwood Estates v. Crosby*, 8th Dist. No. 85047, 2005-Ohio-2457, ¶ 11. The burden of proving a failure to mitigate damages lies with the party asserting the defense. *Id.*

**{¶36}** Here, Shelly settled the criminal case with the City for $10,650. The potential fine could have been in excess of $500,000 because fines were accruing at a rate

of $1,000 per day. Immediately after the criminal charges were filed in October 2010, Shelly retained Krock Esser to design a solution at the lowest possible cost. By the first pretrial in the criminal case, Shelly had already accomplished what the City required: a "no increase" solution to the 100-year flood and a time-line in which the solution could obtain necessary permits and be constructed.

{¶37} Furthermore, Leon Karas admitted at deposition that there was no cheaper solution than constructing the bypass box culvert. (Leon Karas depo. at 98). Although Karas later claimed at trial that removing the culverts would have been cheaper, it offered no expert testimony to support this assertion. To the contrary, all the experts at trial agreed that the bypass box culvert was the most "expeditious" and least expensive solution. Therefore, Karas failed to meet its burden of proof on its affirmative defense that Shelly failed to mitigate damages.

{¶38} Accordingly, the second and third assignments of error are overruled.

## Attorney Fees in Cross-Appeal

{¶39} In its sole assignment of error in its cross-appeal, Shelly contends it was entitled to recover the attorney fees it incurred in litigating its breach of contract claims against Karas because attorney fees under these circumstances are allowed as compensatory damages.

{¶40} The decision to award attorney fees and the amount thereof are within the discretion of the trial court. *Sailing, Inc. v. Pavarini*, 8th Dist. No. 89150, 2007-Ohio-6844. Attorney fees are generally not recoverable in contract actions.

*Windsor v. Riback*, 11th Dist. Nos. 2007-G-2775 and 2007-G-2781, 2008-Ohio-2005, ¶ 75, citing *First Bank of Marietta v. L.C. Ltd.*, 10th Dist. No. 99AP-304, 1999 Ohio App. LEXIS 6504 (Dec. 28, 1999). Such a principle comports with the "American Rule" that requires each party involved in litigation to pay its own attorney fees in most circumstances. As exceptions to that rule, recovery of attorney fees may be permitted if: (1) attorney fees are provided by statute, (2) bad faith by the non-prevailing party is demonstrated, or (3) there is an enforceable contract that specifically provides for the non-prevailing party to pay the prevailing party's attorney fees. *Nottingdale Homeowners Assn., Inc. v. Darby*, 33 Ohio St.3d 32, 33-34, 514 N.E.2d 702 (1987).

{¶41} In support of its claim for attorney fees, Shelly relies on *Allen v. Std. Oil Co.*, 2 Ohio St.3d 122, 443 N.E.2d 497 (1982), and *Berry v. Lupica,* 196 Ohio App.3d 687, 2011-Ohio-5381, 965 N.E.2d 318 (8th Dist.). However, *Berry* involved the breach of a settlement agreement as opposed to a lease agreement. Courts often award attorney fees incurred after the breach of a settlement agreement because "when a party breaches a settlement agreement to end litigation and the breach causes a party to incur attorney fees in continuing litigation, those fees are recoverable as compensatory damages in a breach of settlement claim." *Shanker v. Columbus Warehouse Ltd. Partnership*, 10th Dist. No. 99AP-772, 2000 Ohio App. LEXIS 2391 (June 6, 2000). Because Shelly's breach of contract claim does not involve breach of a settlement agreement, *Berry* does not apply to the facts of this case.

**{¶42}** *Allen* is similarly inapplicable.   In *Allen*, the contract contained an indemnity provision that expressly covered "any liabilities, losses, obligations, claims, damages, penalties, *suits actions, judgments*, *costs and expenses of whatever nature*." (Emphasis added.)   *Id.* at 123.   Unlike the indemnity provision at issue in *Allen,* paragraph Z of the parties' lease does not expressly cover litigation costs and expenses. The indemnity provision contained in paragraph Z of the parties' lease only covers "fines, costs of cleanup or any costs or cleanup or any costs incidental to or a consequence of any environmental violations."   Therefore, because the contract does not expressly provide for attorney fees, the trial court properly declined to award attorney fees beyond those incurred in defense of the criminal case.

**{¶43}** Therefore, the sole assignment of error in Shelly's cross-appeal is overruled.

**{¶44}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
COLLEEN CONWAY COONEY, JUDGE

MELODY J. STEWART, P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR